[File No. 6768]

RUTH J. HOFFMAN, Appellant, v. JOHN M. NESS, Administrator of the Estate of Christian Ness, Also Known as Christ Ness, Deceased; Harold Ness as Administrator of the Estate of Nettie Ness, Deceased; John M. Ness; Mary McKay; Hilda Thompson; Constance Wells, Who Is Also Known as Connie Wells, Olga Sanders, Who Was Formerly Olga Ness; Vera Haas; Edith Work; Ragna Ness; Harold Ness; Sigurd Ness; Conrad Ness and Rudolph Ness, Respondents.

(300 NW 428)

Opinion filed October 18, 1941

*J. E. Hendrickson* and *Forbes & Forbes,* for appellant.

*Clifford Schneller,* for respondents.

·BURR, Ch. J.   Plaintiff alleges that about May 1, 1928, John Ness, as the administrator of the estate of Christian Ness, "found himself unable to pay the legal charges then due and payable from him as such Administrator or to carry on the farming operations on the real estate belonging to said estate and that the assets then in his hands were insufficient to cover the demands then necessary, and that on said May 1, 1928, for value received, he made, executed and delivered to the said Farmers & Merchants State Bank of Wahpeton, North Dakota, his promissory note in writing, dated on said day, wherein and whereby he promised to pay to the order of said Farmers & Merchants State Bank, the sum of eight hundred dollars ($800.00) on demand with interest at the rate of nine (9) per cent per annum until paid.   That thereupon the said John M. Ness as Administrator aforesaid, received from the Farmers & Merchants State Bank, the sum of eight hundred dollars ($800.00) in cash which the said administrator used and expended for the advantage, benefit and preservation of said estate in the payment of claims against said estate, expenses of administration and taxes against said real estate belonging to said estate.

"That said estate and the other defendants and heirs at law were mutually benefited thereby and that the assets of said estate were thereby conserved and increased, all of which was done for the preservation of said estate and the interests of each of the defendants herein."

The plaintiff further alleges that this note was sold, indorsed, and delivered to her, without notice, before maturity, and for valuable consideration; that no part thereof has been paid; that the money represented by the note was used by John M. Ness for the preservation of the estate, of which he is the administrator; and she prays for judgment, finding the amount due on the note "is a legal and valid claim upon and against the property and assets of the estate of Christian Ness, deceased, for the benefit and preservation thereof, and that the same be ordered paid by the administrator of said estate out of the property and assets of said estate."

The summons and the complaint were served upon the administrator on April 25, 1934. The defendant administrators answer jointly, denying the allegations of the complaint; and alleging that if John Ness ever gave this promissory note, then said note "was given as a renewal of other notes previously given, and that for said note given on the 1st day of May, 1928, no cash money was ever received, and not receiving any money therefor, no money was spent at said time for the use and benefit of said estate and for the heirs thereof, but that said note if ever given was given as a renewal note of other notes previously given for debts incurred in the operation of the farm lands by said John M. Ness, individually, and that neither on the 1st day of May, 1928, nor at any time thereafter was any money expended from the proceeds of any loan for the use and benefit of the Christian Ness estate.

"That since the 17th day of April, 1921, John M. Ness has been the duly appointed, qualified and acting administrator of the estate of Christian Ness, deceased, and that he has personally operated the farm property of said estate and has supervised the farm management thereof, and that because of financial and crop conditions prevailing throughout the territory in which said real estate is situated, such farming operations were not profitable, and that in the running and operation of said farm lands, both personally and in active supervision thereof, the said John M. Ness incurred indebtednesses in the purchase of grain and the payment of operating expenses of such farm, and that the income therefrom was not sufficient to pay such operating expenses and that he borrowed money to meet such expenses and gave several and divers notes for the losses incurred in such operations, and that these notes were given to pay overdrafts at the bank upon checks drawn upon his account and to make up deficiencies in the operation of the farm, and if he ever gave a note on the 1st day of May, 1928, as alleged in Paragraph 6 of plaintiff's complaint the same was given as a renewal note for other notes previously given, and that no present consideration was received for the giving of said note and no benefits were received by said estate by virtue of the giving of said note, and that none of the defendants named were benefited by the conservation of said estate and the increasing in value thereof, and that no claims were paid by virtue of the giving of said note and no taxes were paid nor

were any expenses of administration paid by the giving of said note and that the same was given wholly and solely to renew other and different notes."

Defendants allege also "that the indebtedness set out in the amended complaint as a basis of plaintiff's pretended cause of action herein is barred by the statute of limitations of the state of North Dakota."

During the trial of the case, the court permitted the plaintiff to amend her complaint to set forth specifically that the note in question was given in renewal of other promissory notes executed "for cash theretofore received by said administrator in behalf of said Estate from said bank, which said cash was used by said administrator in payment of expenses of administration of said estate, and for payment of taxes against the real and personal property belonging to said Estate, and for the repair of buildings and fences upon said real estate, and for the preservation and conservation of all of the assets belonging to said Estate of C. Ness, Deceased."

The court thereupon permitted the defendants to amend their answer so as to allege "That the indebtedness set out in the amended complaint as a basis of plaintiff's pretended cause of action herein is barred by the Statute of Limitations of the State of North Dakota."

The testimony of John Ness given at the trial shows he executed this note in question as administrator, and his letter to the plaintiff, dated August 31, 1932, is in evidence. Therein he says, with reference to the note, "How much do you figure your claim against the Estate, we expect to have it closed in a month or six weeks."

The record shows that this administrator borrowed from the bank mentioned on several different occasions, giving his note at each time he borrowed; that the note in question was the renewal of notes he had given at these various times; that the notes which he had given at the time he borrowed the money aggregated the amount of this note; and that the items borrowed were received by him as administrator of the estate of Christian Ness, were deposited by him in the account of the estate, and checked out by him as administrator, and none of these items included any personal item of John Ness.

The cashier of the bank testified that the first time Ness came into the bank, he wanted to borrow money for the purpose of paying the taxes on the land. However, the trial court sustained an objection

to this question, and struck out the answer. The cashier testified that when this note for $800 was given, he returned the old notes to the administrator, and that the records of the bank were in the hands of a receiver. Plaintiff demanded of the defendants the production of the notes, and nine notes were produced. They were exhibited to the witness, and he testified they represented the cash received by Ness as administrator, and when the note for $800 was given, the parties figured up the amount, that this aggregated $802.76, that evidently the difference was paid at the time by check on the account of the C. Ness estate, that some of these notes were renewals of original notes given for cash the administrator received, that it was always cash that he got at the bank, and that he got it for the estate. When counsel for plaintiff attempted to show by this witness what the administrator stated was the purpose for which he was getting this money, objection was made on the ground that it was irrelevant, immaterial, incompetent, and hearsay; and the court sustained the objection thereto. The court also sustained an objection to the question propounded the same witness as to whether he knew of his own knowledge that this note in question represented "cash which he (Ness) received as Administrator and went into the account of the Estate of C. Ness, Deceased," and the court sustained the objection and struck out the answer.

This same witness testified that every time the administrator borrowed the money, for which he gave his note, he told him the purpose for which he wanted the money, and that he deposited the amount that he received in the account of "C. Ness Estate, John M. Ness as Administrator;" and when the counsel for plaintiff asked the witness if he recalled the conversation that took place at each time, and to relate the conversation, objection was made thereto on the ground that it was hearsay, "incompetent, irrelevant, and immaterial, not tending to prove or disprove any of the material allegations of the complaint or the matters in issue in this lawsuit." The court sustained the objection on the ground that that was not the best evidence. The plaintiff thereupon offered to prove by this witness that "at each time the defendant John M. Ness as Administrator of the Estate of C. Ness, Deceased, called at the bank for the purpose of obtaining some small loans to be used in connection with the administration of said estate, he—and the various

loans represented by all of the exhibits offered in evidence herein, that such money was to be used for the preservation and conservation of the Estate of said C. Ness, Deceased, in payment of taxes, repairing buildings, fences and maintaining the farm and the buildings and preserving the other assets of the Estate of said C. Ness, Deceased, and that such money was necessary for the preservation and conservation of said assets belonging to said Estate, of which the said John M. Ness was Administrator."

Similar objection was interposed, and the court sustained it, apparently upon the ground that the checks would be the better evidence.

The plaintiff thereupon attempted to prove by this witness that he was familiar with the various items paid out by the administrator on behalf of the estate; and having the supervision and control of that account, he was "familiar with the various items as they came in, were checked out and paid by him;" that an examination would show and substantiate the statements that he had made if the court would permit him to testify. An objection was made to the plaintiff's answering the question, and the court sustained the objection as not being the best evidence.

At the close of plaintiff's case, the defendants moved the action be dismissed on the ground the evidence showed, without dispute, that if there was any money received by the administrator, any action therefor is barred by the statute of limitations; and there was no proof any part of the borrowed money was used for the preservation of the estate.

The plaintiff objected to this motion. The court announced he would not make a ruling at the time. Plaintiff asked the defendants if they rested, to which the counsel replied, "No." The court, after consideration, granted the motion. Judgment was entered accordingly, and plaintiff appeals.

There are some twenty-three specifications of error, but we need not consider them seriatim. The record shows clearly that the money borrowed was borrowed for the use and benefit of the estate. The record shows that all the money borrowed went into the account of the estate, and was checked out by the administrator as the administrator of that estate. We cannot presume the administrator checked out the account of the estate except for the benefit of the estate. The administrator

agreed to repay, with interest as set forth in the notes. The debt was the debt of the administrator as administrator. If he had the power to borrow money, without first having the consent of the county court, he would also have power to agree to pay interest for the use of the money within the limits prescribed by law; and the notes were a written agreement on his part to pay such interest. If the power to borrow existed, then the debt created is governed by the provisions of § 7394 of the Compiled Laws, N. D. 1913, so far as the principle of new or continuing contract is concerned. The renewal notes were an acknowledgment of the debt.

Section 7394 provides: "No acknowledgment or promise is sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby; . . ."

Certainly the new notes constituted a writing signed by the party to be charged, the estate through the administrator. The claim that the statute of limitations had run in this case is not a valid defense. The administrator himself admits the debts were eventually summed up in the note in question. It is a demand note, and action was commenced within six years from the date of the note.

The memorandum opinion shows the court based his decision on the ground that the defense of the statute of limitations is good; that the administrator had no authority under the statute to borrow money without the order of the court; that the facts in the case do not bring the matter within this exception to this general rule; that where the fund borrowed was absolutely necessary for the preservation of the estate, and the money borrowed was expended solely for the benefit of the estate, the party loaning the money would be permitted, in equity, to recover against the estate; and that the record did not show there was any necessity for the borrowing of the money.

As to whether there was necessity requiring the administrator to borrow is not pertinent here. The main question is whether the administrator, under the facts disclosed and the offers of proof, did borrow money to aid him in the process of administration, and whether it is necessary on all occasions to have the authorization of the county court as a prerequisite.

Under the provisions of § 8707 of the Compiled Laws, it is the duty

of the administrator to "protect the real property from waste· or other injury and collect the rents and profits thereof. . . . He has the power under § 8710 to "keep in suitable repair all houses, buildings and fixtures" on the real estate.

As stated in 1 Ross, Probate Law & Practice, 440, § 305: "Since the executor or administrator is intrusted with the possession and control of the estate, it becomes his duty to preserve it. To this end he should keep all buildings and structures in repair, but he should not, under ordinary circumstances, erect new ones. It is the better practice for him to procure the permission of the court before proceeding to make a needed improvement of any considerable magnitude; yet this is not indispensable to the allowance of the expenditures in this account, if they appear just and reasonable. It is his duty to keep the property insured, and to pay the taxes thereon. . . . He is bound to care for livestock until an advantageous disposition thereof can be made, and is not responsible for losses incurred in so doing, if he exercises ordinary diligence and prudence. . . . In short, he may do whatever is necessary to the preservation of the estate intrusted to his care, subject to the contingency of the expense being disallowed by the court. . . ."

We quote this because the text is based upon our probate code and similar codes in other states. The notations refer to the sections of our statute, and the text is amply supported by good authority.

Indeed, if the administrator could never incur a debt which is to be paid by the estate until he first obtained the consent of the county court, then he could never act in an emergency, such as injury to property, loss of feed, employment of counsel, etc. The text shows clearly that the administrator has power to act as any other sensible person would do in such cases.

This is not an action against the estate of C. Ness, deceased, and judgment cannot be rendered against the estate. In Besancon v. Wegner, 16 ND 240, 241, 112 NW 965, an executrix had employed plaintiff as her attorney. "The action was evidently commenced and the complaint framed upon the theory, that the estate is primarily liable for the value of such services." This court stated: "The estate is not primarily liable for the value of these services, although the same were performed for the benefit of such estate at the request of the former

executrix thereof. Such executrix became personally and primarily responsible for the payment of these attorney fees. The services were performed for and in her behalf for the purpose of assisting her in the execution of her trust. True, she was entitled to reimbursement out of the assets of the estate for all reasonable expenses of the administration thereof, including reasonable attorney fees for legal services necessarily rendered at her request. But such fees and expenses are allowed to her, and not to her attorney, and the attorney has no cause of action against the estate for the recovery of the value of such services.

This court pointed out that the action should be brought against the executrix as such, and she would be reimbursed out of the estate for the reasonable value of the services. This rule governs the case at bar. This is an action against the administrator for what he has done during the course of his administration. This rule is upheld in Kelly v. Odum, 139 NC 278, 51 SE 953. In this case the court shows that on the settlement of the accounts of the administrator, "he may be allowed credit, as part of the expenses of administration, for the reasonable charges paid by him for such services; but such allowance is based on the prudence and good faith of the administrator. . . ."

In Tucker v. Grace, 61 Ark 410, 33 SW 530, it is shown that "on a proper showing of payment of such fees, a probate court would allow the administrator credit therefor."

The rulings of the court excluding the evidence already referred to are specified as error. The evidence proffered was pertinent to the issues, and should have been permitted. It was incumbent upon the plaintiff to show that the acts of John Ness were not his own personal, individual acts, but that he was acting for the estate, and as administrator. It was as administrator he was being sued, as well as individually; and though the plaintiff, in her prayer for relief, may have asked more than she was entitled to, nevertheless, she had a right to show that the acts were the acts of the administrator, and that he was attempting to, and was, acting for the estate.

Section 8799 of the N. D. Compiled Laws 1913, is not a bar to such an action as this, for that section merely prohibits an action against an administrator for the recovery of money only, "upon any claim or de-

mand which may be presented to the county court," that is, a claim owing by the estate.

Section 8821 of the Supplement provides that in the settlement of the estate, in addition to the compensation allowed by law, the administrator is "allowed all necessary expenses in the care, management and settlement of the estate. . . ."

In Re Clos, 110 Cal 494, 42 P 971, the executrix had repaired buildings, and it is held that she did not need to show, "as a condition precedent to the allowance of a claim for the expense of repairs on the estate, that the repairs were ordered by the probate court, where the expense was reasonable, and for the benefit of the estate."

It is clear from this the court must allow the necessary expenses. As indicating what other jurisdictions consider necessary, see Re Byrne, 122 Cal 260, 54 P 957; Re Ortiz, 86 Cal 306, 24 P 1034, 21 Am St Rep 44 (traveling expenses); Re Moore, 72 Cal 335, 13 P 880; Re More, 121 Cal 609, 54 P 97 (services of a bookkeeper at times, or an expert accountant, if such services are necessary).

As stated in Re Freud, 131 Cal 667, 671, 63 P 1080, 1081, 82 Am St Rep 407, "In fine, the governing principle is that—subject to the contingency of the expense being disallowed by the court—he (the administrator) may do whatever is necessary for the preservation of the property of the estate, and the specific character of the act done is altogether immaterial."

The California statute, under which these cases are determined, provides that the administrator "shall be allowed all necessary expenses in the care, management, and settlement of the estate."

As pointed out in 1 Ross on Probate Law & Practice, page 752, "No general rule can be announced whereby to determine what disbursements by an executor or administrator are properly allowable in his account, and what not, for much will depend upon the peculiar facts and circumstances of each peculiar case as it arises."

If the administrator took money from the estate and paid these notes, he would be required to show this in his report. If justified in doing so, the county court would allow it. If the county court disallowed it, such action of the county court is not final, and we have no reason to believe that if the trial court should determine that this money was borrowed by the estate, and that the administrator is liable therefor,

that the administrator would not present it and ask for its allowance by the county court. Neither have we reason to believe that if the amount due is ascertained here, as can be done, that the administrator would not take steps by appeal to have the allowance made out of the assets of the estate, if the judge of the county court should disallow it.

Our statute does not require that leave be given by the county court before an action is brought in the district court against an administrator. It cannot be claimed herein that the administrator may not be sued.

In Brickell v. McCaskill, 90 Fla 441, 446, 106 So 470, 472, where an attorney sued the executors for services rendered to the latter as executors, the court lays down the rule that the services rendered for the executors "is the subject of an action against the defendants in their individual capacity, for which judgment may be recovered de bonis propriis.

"Any amount so recovered against the defendants in their individual capacity, if the same was a matter properly chargeable to the estate— that is to say a matter about which they as executors were empowered to contract for the benefit of the estate—may be allowed to them by the probate court in the settlement of their accounts."

It is really immaterial, therefore, whether the defendant John Ness is sued as administrator or individually.

In Luscomb v. Ballard, 5 Gray (Mass) 403, 405, 66 Am Dec 374, there is a discussion as to whether the executor should be sued individually or "in his representative capacity on a promise made by him as executor; and a judgment had de bonis testatoris."

An analysis of the cases supposed to be at variance does not disclose any essential difference in principle. Where the administrator, as administrator, incurs expenses for the benefit of the estate, and which in equity and good conscience should be charged to the estate as part of his expenses, it makes little difference whether he is sued individually or sued as representative. It is a claim against the person who is the administrator, and not a claim against the estate in the nature of one, which is to be presented and allowed as the act of the decedent.

Neither is it contended that if the administrator borrows money for the purpose of preserving the assets of the estate, and then fails to make report thereof to the county court, his creditor must go into the

county court and insist that the executor make a report, and have the matter passed upon by the judge to determine whether he will allow the amount. That such an action brought against the administrator is properly brought in the district court is set forth in Pike v. Thomas, 62 Ark 223, 228, 35 SW 212, 214, 54 Am St Rep 292, where the court says, adopting a quotation as its own, "Although it may be the duty of the court, in passing upon the administration account, to determine the reasonableness of payments for such services, and allow or reject the credits taken therefor, it has not the power, unless expressly granted by statute, to adjudicate upon the claims of such persons against the administrator. Their remedy, if he refuse to pay, is in another court."

On the face of the record, the administrator borrowed the money for the use and benefit of the estate. If he has not repaid it, judgment is rendered against him in accordance with his contract, the same as any dispute between the administrator and his attorney, servant, or creditor, would be determined. When the amount is ascertained, it is the duty of the administrator to pay it, to present this to the county judge as claim for part of the expenses which he incurred, and as a charge against the estate, for which, under the provisions of § 8821 of the Supplement, he is entitled to be reimbursed from the estate, the same as for any other expense of the administrator, if the county court finds it to be reasonable and necessary. The county court would have power to approve what it had power to authorize. If the court should find that a portion thereof, or all of it, was not necessary and proper, then that decision can be reviewed, the same as any other act of the county court. In presenting his report to the county court, the burden of proof would be upon the administrator to show that it was necessary to incur the expenses, and that the money borrowed was used for and on behalf of the estate.

In Ferrin v. Myrick, 41 NY 315, 323, the court had under consideration the distinction between suits brought on contracts made by the deceased, which were properly claims against the estate, and contracts made by the executor for the benefit of the estate, to show the distinction between the judgment rendered, as to whether it was de bonis testatoris, or de bonis propriis.

We are not concerned in this case with the classifications or distinctions, as we hold that it is an action against the administrator, and if

paid out of the assets of the estate, is payable simply because of the duty of the administrator to preserve the estate, and in doing so, he may incur necessary expenses, which are to be allowed to him as part of the costs of his administration, if the county court finds it was prudent and necessary.

It was error to grant the motion to dismiss the case. All that was necessary for the plaintiff to prove, in order to hold the administrator liable as administrator, was to show that the money was borrowed by him for the estate in his representative capacity. On the face of the record, this is shown. If he has paid any portion of this, he has the opportunity of showing the payment, for he did not rest on the trial of the case. How much of the claim, if any, should be paid to the administrator as necessary expense, out of the estate, will be determined at the proper time.

On the retrial, the court will find whether the debt was incurred for the benefit of the estate, and, if so, will require the administrator to present it to the county court as part of his expenses of administration; and the county court then will determine whether the administrator is to be reimbursed from the estate for the amount.

The judgment is reversed, and the case remanded to the trial court for further proceedings.

CHRISTIANSON, BURKE, MORRIS, and NUESSLE, JJ., concur.