PIONEER CREDIT CO., Towner, North Dakota, Plaintiff and Appellee,

v.

Orville LATENDRESSE, Defendant and Appellant.

Civ. No. 9578.

Supreme Court of North Dakota.

Aug. 2, 1979.
Rehearing Denied Aug. 22, 1979.

Pringle & Herigstad, Minot, for plaintiff and appellee; argued by Richard P. Olson, Minot.

Orville Latendresse, defendant and appellant, pro se.

SAND, Justice.

Pioneer Credit Company filed a complaint against Orville Latendresse for payment of

the balance due on a $3,000.00 note dated 31 December 1975. Latendresse counterclaimed for $508,875.00, plus interest, alleging the plaintiff failed to extend the full amount of credit promised him in connection with another transaction in 1963. The district court granted motions in favor of the plaintiff on both the complaint and the counterclaim. Latendresse appealed.

On 22 November 1963, Latendresse executed a real property mortgage deed securing payment of an $8,269.80 note due 22 November 1964. On the same day Latendresse executed a chattel mortgage securing payment of an $8,269.80 note dated 22 November 1963 and due 22 November 1964. The chattel mortgage also stated it secured additional advances not to exceed $8,000.00. Attached to the chattel mortgage, which was introduced as an exhibit, was a copy of a deposit receipt dated 22 November 1963 showing an $8,269.80 deposit into Latendresse's account at the Pioneer State Bank, less $100.00 deducted for the cost of an abstract and attorney fees apparently rendered in connection with the real estate mortgage. Latendresse's position at trial was that when the two 1963 mortgages were executed he was promised $8,269.80 under each, plus $3,000.00 for additional future advances under the chattel mortgage, making a total promise to loan him the sum of $19,539.60. It appears undisputed that Latendresse received, as a result of the 22 November 1963 transactions, only the $8,269.80 evidenced by the 22 November 1963 deposit receipt.

On 31 December 1975, Latendresse executed a $3,000.00 note, due 1 December 1976, in favor of Pioneer Credit Company. After the note became overdue, Pioneer Credit, on 11 August 1978, filed a complaint against Latendresse seeking collection of the $2,084.26 due on the principal balance, plus $535.92 in interest. In his answer, Latendresse stated the bank had written the note off. In addition, he counterclaimed for damages he suffered as the result of plaintiff's failure to extend to him credit in the full amount of both mortgages executed in 1963. He calculated those damages at $508,875, plus interest at an annual

rate of 9½%. Pioneer Credit filed a reply to the counterclaim, along with a motion for summary judgment on both its claim and Latendresse's counterclaim.

A hearing was held in district court on 25 August 1978 at which Latendresse was allowed to testify. During the hearing the district court granted Pioneer Credit's motion for summary judgment on its claim after explaining to Latendresse that the mere fact a lending institution writes off a loan on its own books does not cancel the debtor's obligation on the loan. At the conclusion of the hearing, the trial court provided both parties with time to present briefs on the issue of Latendresse's counterclaim. On 12 October 1978, the district court issued an order granting summary judgment in favor of Pioneer Credit on the counterclaim. Judgment was entered accordingly and Latendresse appealed.

■ In his notice of appeal, Latendresse stated he was appealing both the granting of summary judgment in favor of Pioneer Credit's claim as well as the dismissal of his counterclaim. Neither in his brief nor on oral argument, however, did Latendresse raise an issue regarding error in granting summary judgment in favor of the plaintiff's claim against him. Consequently, we conclude Latendresse has abandoned his appeal as regards that claim and we now examine the issues raised regarding his counterclaim.

As stated previously, Latendresse argued that, in 1963, the plaintiff promised to loan him $8,269.80 for each, the chattel mortgage and the real estate mortgage in addition to a future advance of $3,000 on the chattel mortgage. He asserted his later financial difficulties were caused by his receiving only $8,269.80 rather than the full $19,539.60 he was allegedly promised.

■ In its order granting summary judgment, the trial court concluded Latendresse's counterclaim was barred by the statute of limitations. In reaching its conclusion, the trial court relied on § 28–01–16, NDCC, which states in part that an action on "a contract, obligation, or liability, ex-

press or implied," must be commenced within six years after the cause of action has accrued. Latendresse argued his partial payments on the note that was secured by the mortgages, plus his execution of various renewal notes, acted to toll the statute of limitations on the mortgages and correspondingly the plaintiff's alleged promise to pay him the additional $8,269.80, plus the $3,000 future advance. As authority for his argument, Latendresse cited *Hansen v. Branner,* 52 N.D. 892, 204 N.W. 856, 41 A.L.R. 814 (1925); *Magnuson v. Breher,* 69 N.D. 197, 284 N.W. 853 (1939); and *Hoffman v. Ness,* 71 N.D. 283, 300 N.W. 428 (1941).

In *Hansen v. Branner, supra,* this court held that where partial payment or acknowledgment of a debt secured by a real estate mortgage tolled the statute of limitations on the debt, it also extended the right of action on the mortgage. See also, *Magnuson v. Breher, supra,* 69 N.D. 197, 284 N.W. at 855.

In *Hoffman v. Ness, supra,* we said that execution of a renewal note constituted written acknowledgment of the prior debt as to extend the right of action on the debt.

The above cases, to the extent they are applicable, stand for the proposition that the statute of limitations was tolled on the plaintiff's right to seek a remedy under the mortgages each time that Latendresse renewed or made a partial payment on the underlying note which the mortgages secured. The renewals or payments were acknowledgments by Latendresse that he owed a debt to the plaintiff. These cases do not, as Latendresse contends, stand for the proposition that Latendresse's renewals or payments tolled the statute of limitations on any promise by the plaintiff to lend Latendresse money.

■ Generally, a mortgage is an executed conveyance, defeasible upon the carrying out of an executory contract. Osborne, Mortgages, 2d ed., § 107 (1970). It does not represent the underlying debt but merely serves as security for the performance of the debt. Thus, unless the mortgage expressly provides, it does not constitute a promise to pay or lend money by the mortgagee. Such a promise, if not contained in the mortgage and if it exists, must be contained in the underlying obligation which the mortgage secures.

■ The chattel mortgage in this case stated its purpose was to secure payment of an $8,269.80 note due 22 November 1964. The future advance clause contained in the chattel mortgage does not promise that the plaintiff will lend an additional $8,000, but only that if such advances are made the same chattel mortgage will act as security for them. See § 41–09–17(5), NDCC (9–204, UCC). The real estate mortgage also does not promise a future loan of $8,269.80. Rather, the mortgage provided it was an acknowledgment by Latendresse that he had received $8,269.80 and that the mortgage secured a note in that amount. We conclude the mortgages do not represent nor evidence promises on the part of the plaintiff to lend money to Latendresse in the amount of $19,539.60.

Latendresse's confusion in this case arises from his belief that he is entitled to certain sums of money for each of the mortgages he executed.[1] The practice of securing one debt with both a real property mortgage and a chattel mortgage is not unusual and may be necessary where the debtor does not have adequate real or personal property alone to guarantee payment of his obligation. For factual situations, see *Walker v. Community Bank,* 10 Cal.3d 729, 111 Cal. Rptr. 897, 518 P.2d 329 (1974); *American State Bank v. Cwach,* 85 S.D. 562, 187 N.W.2d 107 (1971); *Schmitt v. Blackwelder,* 379 F.2d 278 (2d Cir. 1967); *Spiotta v. William H. Wilson, Inc.,* 72 N.J.Super. 572, 179

1. Apparently Latendresse was confused as to the legal significance of the mortgages (real and chattel) he gave to secure his debt to the plaintiff. The other alternative is that he is maintaining this action in an attempt to get something for nothing. Although we prefer to believe the former, it would serve no meaningful purpose, and consequently we decline to turn this legal opinion into a treatise explaining to Latendresse the legal significance of his transaction.

A.2d 49 (1962); *Jersey Insurance Company of New York v. Altieri,* 5 N.J.Super. 577, 68 A.2d 852 (1949). See also § 41–09–47, NDCC (9–501, UCC).

In this case, where both mortgages recited the underlying obligation as a note in the amount of $8,269.80 due 22 November 1964, and where Latendresse has failed to show the existence of two such notes, the only logical conclusion is that the mortgages were required and given as security for one note. If a second note was promised, such promise has not been exhibited by Latendresse. Nor has there been a showing that the payments made by Latendresse or the renewals given to him by the plaintiff were on a second $8,269.80 note. Therefore, we conclude, as did the trial court, that if a promise were made in 1963 for a second note, an action on that promise by Latendresse is now barred by the statute of limitations.

Latendresse has also raised certain complaints or questions concerning the manner in which the execution of the plaintiff's judgment on its claim was carried out. He also raised a question concerning restrictions placed upon him by the district court in the use of that court's library facilities in preparing his appeal. There is no question, however, that Latendresse had access to law library facilities of both this court and the district court. Limitations placed on that use by the district court is not a proper consideration in this appeal. Nor is the manner in which the plaintiff's judgment was executed a proper issue on appeal in this case as it involves a number of factual questions which should have been presented to and decided by a district court.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.