REGAN FARMERS UNION
COOPERATIVE, Plaintiff
and Appellee,

v.

Ray HINKEL, Defendant and
Appellant.

Civ. No. 880216.

Supreme Court of North Dakota.

March 21, 1989.

Christian S. White, IV (on brief) and Sheila Keller (argued), of Worthington Law Firm, Bismarck, for plaintiff and appellee.

Rauleigh D. Robinson, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Ray Hinkel appealed from a judgment entered against him awarding Regan Farmers Union Cooperative (Regan) $11,441.96. We affirm.

In February 1976, Hinkel received a $22,-000 advance from Regan on 5,550 bushels of durum owned by Hinkel and stored with Regan. The amount owed on the advance was to be paid out of the proceeds from the sale of the durum.

On June 14, 1977, Regan's manager, Richard Lee, sent a letter to Hinkel informing Hinkel that he had 5,302 bushels of durum stored with Regan and that storage and interest charges had accrued to $3,269.46. Lee also stated in the letter that the charges were to be paid by June 30, 1977.[1]

---

* VERNON R. PEDERSON, Surrogate Justice, sitting in place of MESCHKE, J., disqualified.

1. This letter presumably was an attempt by Regan to comply with Sections 60–02–30 and 60–02–31, N.D.C.C. (1960), which were in effect at the time Regan sold Hinkel's durum. Section 60–02–30 provided that "[a]ll storage contracts on grain in store at public grain warehouses shall terminate on June thirtieth of each year.... [T]he warehouseman shall sell, upon the expiration of the storage contract, at the

Regan sold the durum in July 1977, net of taxes, for $11,389.41. That amount was applied to Hinkel's outstanding balance. Apparently Regan did not contact Hinkel at that time and inform him that the durum had been sold. A grain draft was issued by Regan payable to the order of Hinkel. However, the draft was not endorsed by Hinkel; rather, it was merely endorsed "applied on advance" with no indication of who wrote the endorsement.

Over the next several years, Regan and Hinkel communicated with each other about the balance due on the advance, but Hinkel did not make any payments. Finally, in March 1984, Hinkel signed a note for $12,000 representing the amount due on the advance. He subsequently applied the proceeds from the sale of some sunflowers to pay a portion of the amount due under the note. When Hinkel failed to make further payments pursuant to the note, Regan brought this action.

Hinkel defended on the ground that Regan's claim was barred by either Section 28–01–16, N.D.C.C. (statute of limitations for contracts), or Section 41–02–104, N.D. C.C. (statute of limitations under the Uniform Commercial Code). In addition, Hinkel alleged that Regan fraudulently led him to believe that the durum still was in storage with Regan, and that had he known the grain had already been sold, he would not have signed the promissory note. Thus, he claims, there was no consideration given for the note. Hinkel also filed a counterclaim alleging that in 1979 he told Regan to sell the durum when the price rose to $5.40 or $5.50 per bushel; and, because Regan did not sell the durum when it reached that price, he sustained a loss of at least $29,-161.

The trial court found that at the time Hinkel signed the promissory note he was aware or should have been aware that the durum had already been sold, and thus there was no fraud on the part of Regan. The trial court concluded that by signing the promissory note in 1984 Hinkel was precluded from raising the statute-of-limitations defense. Judgment was entered against Hinkel in the amount of $11,441.96.

On appeal, Hinkel argues that Regan's action is barred by the statute of limitations.[2] He also argues that the promissory note is unenforceable because he was fraudulently induced to sign the note.

A statute of limitation is a limitation that precludes one from asserting a right of action unless suit is commenced within a specified time period. We have previously stated:

"It is a statute enacted as a matter of public policy, to fix a limit in which an action must be brought or the obligation will be presumed to have been paid. The statute is intended to run only against those who are neglectful of their rights, and fail to use reasonable and proper diligence in the enforcement thereof. They are based on the presumption of law that, from the lapse of time, it is fair to presume that the debt has been paid." *Burleigh County v. Kidder County*, 20 N.D. 27, 32–34, 125 N.W. 1063, 1065 (1910).

Section 28–01–36, N.D.C.C., provides:

"No acknowledgment or promise is sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby, but this section shall not alter

local market price on the close of business on that day, sufficient of said stored grain to satisfy all accrued storage charges thereon and warehouseman's advances upon such storage contract, ..." Section 60–02–31 provided that "[o]n or before June first of each year, the warehouseman shall notify by mail the person in whose name the grain was stored of his intention to make a sale to satisfy accrued storage charges."

2. Hinkel suggests that the trial court did not address the merits of his statute-of-limitations argument because he raised the issue in a motion rather than in his answer. But the trial court did address the merits of this issue when it said, "He signed the note, as the account said. Then he [Hinkel] allowed the sunflower sales to be applied, also a recognition of the debt. Also, by signing these documents, taking care of the statute of limitations argument."

the effect of any payment of principal or interest."

In *Hoffman v. Ness,* 71 N.D. 283, 300 N.W. 428 (1941), we held that under this statute [3] an execution of a renewal note constituted a written acknowledgment of a prior debt, thereby starting the statute of limitations to run from the date of the renewal note. Thus, where a debtor signs a note indicating he owes a certain amount on a past debt, the debtor waives any statute-of-limitations defense he may have had prior to signing the note, and the statute of limitations begins to run anew from the date he signs the renewal note. See also *Erenfeld v. Erenfeld,* 196 N.W.2d 406 (N.D.1972); *Hansen v. Fettig,* 179 N.W.2d 739 (N.D. 1970); *Huus v. Huus,* 75 N.D. 392, 28 N.W.2d 385 (1947). Because Hinkel signed a promissory note acknowledging he owed $12,000 to Regan, the statute of limitations began to run anew on the date he signed the note. And, since this action was brought within the specified time period,[4] the trial court was correct in holding that it was not barred by the statute of limitations.

█ Hinkel also argues that he was fraudulently induced to sign the promissory note, and therefore the note is unenforceable. The fraud alleged to have occurred is that Regan sold Hinkel's durum in 1977, but from 1977 until after this action was commenced it led Hinkel to believe that Regan still had possession of the durum; and had Regan sold the durum when it was supposed to, the proceeds from the sale would have been more than enough to pay off the advance.

Fraud is a question of fact and must be proved by clear and convincing evidence. *Benefiet v. Hoiby,* 370 N.W.2d 513 (N.D. 1985). Findings of fact will not be set aside unless clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *D.G. Porter, Inc. v. Fridley,* 373 N.W.2d 917 (N.D.1985).

The trial court found that at the time Hinkel signed the promissory note in 1984 he knew or should have known that his durum had already been sold, but nonetheless signed a note indicating he still owed $12,000. There is ample support in the record for the trial court to conclude that Hinkel did know that his grain had been sold.

Prior to selling the durum, Regan sent a letter to Hinkel demanding that interest and storage charges be paid by June 30, 1977. Although the letter may not have been in compliance with the statutes in effect at the time, it was notice to Hinkel that he owed Regan money for interest and storage and that he was to see that Regan was paid; but Hinkel did not contact Regan until after the June 30 deadline, and did not determine the status of the advance.

The amount of the original advance was $22,000; yet Regan was seeking payment of only $12,000. And, although he had the opportunity, Hinkel did not ask how Regan arrived at $12,000, nor did he question that he owed Regan the money.

Although Lee may have misled Hinkel by not expressly telling him his durum had already been sold at the time Hinkel instructed Lee to sell the durum when the price reached $5.40, Hinkel did not, prior to signing the note, attempt to hold Regan to that obligation. He testified that at the time he signed the note he believed Regan still was storing his durum and that it was his understanding that the durum would be sold and he still would owe $12,000. He agreed to that. Yet, after this lawsuit was commenced, he sought to rely on the fact that Lee was instructed to sell the durum

---

**3.** At that time, the statute was codified as Section 7394 of the Compiled Laws, N.D.1913. However, the language is the same as Section 28–01–36, N.D.C.C.

**4.** There is some question as to which statute of limitation applies, Section 28–01–16, N.D.C.C. (six years), or Section 41–02–104, N.D.C.C. (four years). Because this action on the note was initiated prior to the time specified by either of these statutes of limitation, we need not decide the issue. We also note that if the statute of limitations is tolled under North Dakota contract law, it is also tolled under the Uniform Commercial Code as adopted by North Dakota. See 5 Anderson, *Uniform Commercial Code,* § 2–725:100 (3d ed. 1984) ["If by pre-Code law the situation is such that a promise made by the defendant has the effect of tolling the statute of limitations, the defendant's promise continues to have such effect under the Code"].

when the price rose to $5.40 but did not do so. If Hinkel intended to rely on the fact that Regan should have sold his durum at the time the price was approximately $5.40, it is logical to assume he would not have signed that note, because, under that assumption, Regan owed Hinkel money. To Hinkel, it should have made no difference whether or not the durum still was in storage; he told Regan to sell it when the market price reached $5.40, it reached $5.40, Hinkel knew it reached $5.40, and knew that it was not sold when it reached that price (because, of course, the durum had already been sold). Knowing all this, he nevertheless signed the note. The trial court's rulings were not clearly erroneous.

The judgment is affirmed.

ERICKSTAD, C.J., and LEVINE, GIERKE and MESCHKE, JJ., concur.