### BLACKMAN v. BECHTEL.*

#### SAME v. BECHTEL TRUST CO. et al. (two cases).
#### Nos. 10265–10267.

Circuit Court of Appeals, Eighth Circuit.

Dec. 11, 1935.

Edward A. Doerr, of Davenport, Iowa (Realff Ottesen, of Davenport, Iowa, on the brief), for appellant.

Reuel B. Cook and H. B. Betty, both of Davenport, Iowa (Robert A. Rockhill, of Marshalltown, Iowa, and Gareld Leming, of Hampton, Iowa, on the brief), for appellees.

Before STONE and FARIS, Circuit Judges, and RAGON, District Judge.

RAGON, District Judge.

George M. Bechtel & Co. was on involuntary petitions, filed September 9, 1933, adjudicated a bankrupt on December 8, 1933. Smith Blackman was appointed trustee of the estate, and instituted proceedings to set aside three alleged fraudulent transfers which were the subject of three distinct suits. The cases were consolidated, and the trustee prosecutes this appeal from an adverse decision.

George M. Bechtel established at Davenport, Iowa, before 1900, a securities business dealing principally with Iowa municipal bonds. The business grew in volume and public confidence to such proportions that it eventually purchased and resold most of the municipal bonds issued in the state. George M. Bechtel, as a sole trader, having developed his operations to a considerable magnitude, associated his son, Harold R. Bechtel, as a copartner in 1926. The business continued to prosper up until the depression came upon them in its full force.

The financial condition of the firm became acutely embarrassing in July, 1932, when the firm's application for a renewal of their annual license which was required of those dealing in securities under the Iowa statutes was denied. At that time they were advised by the securities department that a license would not be issued to the firm because of its financial condition. The matter of renewing the license seems to have been left

*Rehearing denied Feb. 12, 1936.

in suspense, except for occasional correspondence which passed between the firm and the securities department, until January, 1933.

At this time the securities department for the state of Iowa changed administrations, and the new superintendent shortly thereafter became insistent that the firm take out license or cease doing business. After correspondence between the firm and the superintendent had been drawn out until April, 1933, the securities department demanded an examination of the firm's books, to which the firm delayed assent until May 10, 1933. Upon examination of the books it was disclosed that the moneys sent the firm by municipalities for the specific purpose of paying the principal and income of issues of securities payable at the firm's office and funds collected by the firm for the accounts of others, had been mingled with its general funds, and there were insufficient funds or quick assets on hand to meet these liabilities. The firm had acted as paying agent for municipalities whose bonds they had sold. The custom seems to have developed for municipalities issuing bonds to send money for the payment of maturing bonds or interest coupons to George M. Bechtel & Co. in advance of such maturities, and for customers to send bonds and interest coupons to the firm in advance of their maturities for collection. The firm was often directed to reinvest money so collected and, accordingly, customers would have credit balances. These were the funds about which the securities department manifested a serious concern, contending that the funds which had not been segregated were in their nature trust funds.

On June 17, 1933, the securities department, through proper officials, caused to be instituted a suit against the firm in the district court of Scott county, Iowa, alleging that the firm was insolvent, short in funds "in the nature of trust funds," had failed and refused to account for funds intrusted to them by clients, and that the firm was dealing in securities without having procured a license to do so. A receiver to wind up the affairs was asked and an injunction prayed restraining the firm from dealing in securities. A consent decree for a temporary injunction was entered on June 19, 1933. By agreement of the parties, further proceedings in the case were to be held in abeyance for a period of 20 days, awaiting the action of the Reconstruction Finance Corporation on the application for a loan made by George M. Bechtel & Co.

During the negotiations for the RFC. loan, members of the firm learned that 472 shares of stock in the Independent Baking Company owned by Martha R. Bechtel, wife of George M. Bechtel, and 30 shares in the same company owned by George M. Bechtel & Co. could be sold to the Independent Baking Company for $300 per share. Mrs. Bechtel had owned 112 shares of this stock for many years, and in January, 1932, the additional 360 shares had been transferred to her by George M. Bechtel in exchange for other securities which were claimed by appellees to be more liquid than the 360 shares of the Independent Baking Company. The trade was consummated by the Independent Baking Company exchanging other securities for its stock.

On June 28, 1933, Martha R. Bechtel created a trust which was known as the "Martha Bechtel Trust," and the Bechtel Trust Company was made trustee; the corpus of the trust consisted of corporate securities received in the trade with the Independent Baking Company of the value of $150,600. The general purpose of the trust was to convert these securities into money and pay creditors holding demand items arising out of collections, remittances, or disbursements. On June 28, 1933, George M. Bechtel & Co. executed and delivered to Martha R. Bechtel its promissory note for $150,000, and secured the payment of this note with 99,982 shares of the common stock of the Iowa Southern Utilities Company; 59,982 shares of this stock was owned by George M. Bechtel, and 40,000 shares were owned by Harold R. Bechtel.

Smith Blackman, trustee, brought suit against Martha Bechtel to set aside the pledge of the Iowa Southern Utilities stock and to recover the same as an asset of the bankrupt estate, alleging that the bankrupts were insolvent on June 28, 1933; that the pledge was made in contemplation of bankruptcy and with the fraudulent intent of preferring certain creditors, thus preventing the application of the bankrupt's property to a pro rata payment of their debts. Martha R. Bechtel denied these allegations and asserted her good faith in the transaction and alleged she gave a present consideration

for the pledge of $141,600. These are the issues in case No. 10265.

The second suit involved is brought by the trustee to recover the sum of $9,000 from the Bechtel Trust Company and Martha R. Bechtel. This sum represented the value of the Independent Baking Company's stock which had been owned by George M. Bechtel and its value in other securities had been placed in the corpus of the trust. The trustee alleged that the $9,000 in value was transferred by George M. Bechtel to Martha Bechtel without consideration, and subsequently by her transferred to the Bechtel Trust Company. The same allegations of insolvency and fraudulent intent as made in the first case were incorporated in case No. 10267.

The funds in the Martha Bechtel Trust were not sufficient to cover the items which the securities department insisted must be secured, and on July 3, 1933, George Bechtel transferred $16,000 additional, depositing it with the Bechtel Trust Company, where it was paid out to the creditors of George M. Bechtel & Co. The defendant contends it was not a part of that or any other trust, but in fact only a deposit with it and was paid out by it immediately. This is case No. 10266.

The trustee brought these three suits under the provisions of sections 67e and 70e of the Bankruptcy Act (11 U.S.C.A. §§ 107 (e), 110. (e) for relief against allegedly fraudulent conveyances made within four months preceding the filing of the petition in bankruptcy.

A logical consideration of these three cases, which present a difference in issues, would call first for a consideration of the case of Smith Blackman, Trustee, v. Martha R. Bechtel, No. 10265, as the contentions in the other two cases grow out of the transaction covered by this case.

The issue in this case is whether there was in the formation of the trust, and the pledge of the 99,982 shares of the Iowa Southern Utilities Company stock, as security for the note indemnifying Martha R. Bechtel, either fraud as a matter of law or fraud as a matter of fact, on the part of the bankrupts, George M. Bechtel and Harold R. Bechtel. The intention with which this pledge was made determines whether or not it was void under section 67e or voidable under section 70e of the Bankruptcy Act.

If George M. Bechtel and Harold R. Bechtel pledged this stock with bankruptcy in view and with the intent to hinder, delay, and defraud their creditors, then their acts came within the condemnation of these sections of the Bankruptcy Act. On the other hand, if they acted in good faith to preserve their property and enable them to meet their indebtedness, then such actions were permissible. The test, therefore, is whether or not this transaction was motivated by a fraudulent intent, and this is necessarily a question of fact to be gathered from the record. The creation of the trust and the pledge of the securities to Martha Bechtel were so related that they were but parts of a single transaction and should be so considered in reaching a conclusion on the facts in the case.

The record discloses that George M. Bechtel & Co. had been engaged in a highly successful business for many years and the refusal of the securities department to issue them license in 1932 had necessarily a paralyzing effect upon their business. The demand in 1933 that they desist from carrying on further business in the state until they procured a license meant that they must either procure the license or see their business crash in utter ruin. While the superintendent of the securities department denied it was his intention to give the firm license, when and if the demand items were made secure, obviously, the Bechtels were under the impression that if they could arrange to secure these items about which the securities department complained, license would be granted. It is difficult to reconcile the expense and trouble to which they subjected themselves in trying to procure the license with any other impression. With the license they believed they could continue in business and financially rehabilitate themselves. The efforts put forward by the Bechtels to re-establish the security of their business is evidence of their good intentions. They cashed in some of their insurance, which was exempt from the claims of creditors, and applied it on their indebtedness. They contacted their creditors to secure their co-operation in an extension of credit with a fair degree of success. Application was made for a loan from the Reconstruction Finance Corporation and diligent efforts were made to effect this loan, but the departmental procedure in passing on the same caused delay. While the ne-

gotiations for the loan were being carried on, the elder Bechtel learned of the opportunity for a deal with the Independent Baking Company.

The trust indenture was immediately prepared, and after discussions concerning its contents with the superintendent of the securities department, he gave his approval. The appellant assails the trust because, they contend, it is terminable at the will of the partners, and for the further reason that the beneficiaries are not sufficiently designated. On July 25, 1933, an amendment making more specific the beneficiaries cured this defect and another amendment of September 9, 1933, remedied any objection as to terminability. These amendments were suggested by the securities department; in fact, they were prepared by the securities department. Therefore, the trust arrangement not only had the approval of the securities department, but it had the active co-operation of the department in properly adjusting the terms and provisions of the trust. It is contended that George M. Bechtel & Co. was insolvent at the time the trust was created and the pledge of Iowa Southern Utilities stock was made, and the record discloses that the firm was in an embarrassed financial condition at the time. The formation of the trust, it is maintained by appellant, was simply a device for putting the property of the partners beyond the reach of creditors and still let it remain under the control of the firm. It is undisputed that Martha Bechtel put the value of $141,600 in the trust, and, that this, together with the $9,000 additional belonging to George M. Bechtel, was insufficient to carry out the purpose of the trust, so when the trust was carried out there would be no surplus. The amount of the stock of the Iowa Southern Utilities over and above her lien was left available to the creditors of George M. Bechtel & Co. Martha Bechtel owned some of the Independent Baking Company stock for many years, and she owned the entire block of stock for about 18 months before she made the transaction with the Baking Company in which she received the securities which constituted the corpus of the "Martha Bechtel Trust." As good business practice and in common fairness we do not think any sinister motives could be attributed to the partners in pledging to her the Utilities Stock as security for the advancement of $141,600, which was her separate property.

The reasonable construction to be placed upon the conduct of George M. Bechtel and Harold R. Bechtel from the facts disclosed by the record is, that the Martha Bechtel Trust, and the resulting pledge of the Utilities Stock to Martha Bechtel, was an honest effort to avert a financial crash and to continue in business, thereby promoting the interest of all their creditors. "Making a mortgage to secure an advance with which the insolvent debtor intends to pay a pre-existing debt does not necessarily imply an intent to hinder, delay, or defraud creditors." Dean v. Davis, 242 U.S. 438, 444, 37 S.Ct. 130, 132, 61 L.Ed. 419. The partners made this pledge in the expectation that they would be granted a license by the securities department and would be able to continue in business and thereby extricate themselves from their financial difficulties. There is no basis in the evidence to justify a claim of fraud in law. It is not unlawful for one who subsequently becomes a bankrupt to convey property to protect a class of creditors whose claims are entitled to priority of payment where the conveyance is not made with the intention to defeat, hinder, or delay general creditors. The lower court found that there was nothing in the testimony disclosing a purpose or intention upon the part of George M. Bechtel and Harold R. Bechtel to hinder, delay, or defraud any of their creditors, and while there are scattered facts and circumstances which might be calculated to arouse suspicion, yet we believe from the entire record that the findings of the District Court are correct, and should not be disturbed. Coder v. Arts, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772, 16 Ann.Cas. 1008; Van Iderstine v. National Discount Company, 227 U.S. 575, 33 S.Ct. 343, 57 L.Ed. 652.

In case No. 10267, Smith Blackman, Trustee, v. Bechtel Trust Company and Martha Bechtel, involving an item of $9,000, the same principles of law apply to the kindred facts in that case as to the facts in the case just discussed. George M. Bechtel was the owner of 30 shares of stock in the Independent Baking Company which was sold or exchanged to the Independent Baking Company for other securities, and these securities formed a part of the $150,000 of the

securities placed in the trust by Martha Bechtel. The securities which represented this $9,000 were placed in the trust to accomplish the same purpose as the securities which were owned by Martha Bechtel. There was no intention to hinder, delay, or defraud the creditors of George M. Bechtel & Co. present in this transaction.

The remaining case, No: 10266, is the suit of the trustee against the Bechtel Trust Company to recover the $16,000 deposited with it to be applied to the same purposes for which the Martha Bechtel Trust was formed. This money was borrowed by George M. Bechtel, deposited with the Bechtel Trust Company, and checked out within a few days after its deposit. It in nowise decreased the bankrupt's estate, as it was paid to the creditors designated in the trust. This deposit was not contemplated by the terms of the trust, nor was it in any way related to the trust. The evidence fails to disclose any connection of Martha R. Bechtel with this transaction, or that she ever had any knowledge of it. We do not find anything in the record justifying the contention that this sum in dispute ever became a part of the trust. It was a mere deposit to be paid out to creditors designated in the trust. Even if this money had passed into the trust, evidence of the intention to delay, hinder, or defraud creditors is lacking. New York County National Bank v. Massey, 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380; Citizens' National Bank of Gastonia v. Lineberger (C.C.A.) 45 F.(2d) 522.

The decision of the trial court in each of the three cases is in all respects affirmed.