# AMERICAN STATE BANK, Respondent v. CWACH et ux, Appellant

## (187 N.W.2d 107)

(File No. 10836.   Opinion filed May 19, 1971)

**Frank Vladyka,** Tyndall, **Bogue & Weeks, by Everett A. Bogue,** Vermillion, for appellant, Wilma Cwach.

**James T. Goetz, Goetz, Hirsch & Haar,** Yankton, for respondent.

WUEST, Circuit Judge.

Appellant Wilma Cwach and Leo J. Cwach were at all times material to this action, husband and wife, and the American State Bank, a banking corporation at Yankton, South Dakota, with whom the Cwachs had done business for many years. This is an action by the bank to secure a judgment against the Cwachs in the amount of $107,297.79, upon a series of promissory notes signed by them, and for the foreclosure of mortgages executed by them upon tracts of real estate in Yankton and Bon Homme Counties as security for payment of the notes.

There are 15 promissory notes bearing dates from April 23, 1963, to October 2, 1964, inclusive. The notes indicate each of them was signed by Wilma Cwach and her husband on the date it bears; however, none of the notes was signed by Mrs. Cwach until October 14, 1964, when she and her husband signed the real estate mortgages. The notes were signed by Mr. Cwach on their respective dates and were given by him for funds which he borrowed from the bank to buy and feed livestock in connection with his farming operations. They were secured by chattel mortgages upon the livestock. The funds were deposited in a joint bank account. Most of the checks drawn upon this account were written by Mr. Cwach, but on occasion Mrs. Cwach wrote a check on the account. She is a college graduate and had been a school teacher for many years.

Mr. Cwach and appellant were tenants in common of 320 acres of farm land in Bon Homme County which is fully described in the mortgage of October 14, 1964. She is still the owner of an undivided one-half interest in that property. Another real estate mortgage was executed by Leo and Wilma Cwach on October 14, 1964, to the plaintiff which included the homestead of appellant and her husband. Leo and his

wife at all times were in possession of and used the homestead as such.

Mr. Echtermeyer, a vice-president, was employed by the bank on September 1, 1964. On Monday, October 12, 1964, he made a physical inspection of the livestock near the homestead in Yankton County. This inspection showed a substantial shortage of hogs, cattle, and sheep. Mr. Cwach was not at home on the 12th, so Mr. Echtermeyer went to the farm early on the 13th. He testified on cross-examination:

"I went out to the Cwach farm and Leo was combining beans right along side the road there on this highway 50. And I ask Leo if he could show us where we might have possibly missed some of these, that we came up quite a bit short on the hogs and the sheep. If he would go with me and we would find out where the rest of them were. And Leo stuttered around a while and then he said well if everything isn't there will they put me in jail? And I said I don't know. But if some of this stuff is not here maybe we ought to get in the car and go to the bank and talk with Mr. Lloyd about it.[1] Which is what we did.

Q. Will you state to the court this conversation was about at the bank. Leo was there. You were there.

A. Mr. Lloyd was there.

Q. Yes.

A. Three of us.

Q. Just what was said there?

A. Well. I can't say word for word. I don't know word for word. We talked about some of it and at this time we confronted him with the shortage he still said that some of it was probably around somewhere. And also, that there were still 350 steers out

---

1. Mr. Lloyd was the bank president.

at Bon Homme. Which Lee Plank and I hadn't been out there.

Q. You're sure it was 350 steers?

A. Yes.

Q. You have a memorandum or something written down?

A. Yes I do. I did write it down at that time for my own little notes. So he still maintained that there were this many steers out there. We then got back in the car. We hadn't decided on anything, what to do. We really didn't state anything that we were going to do. We told Leo that we would be in touch with him. And I took Leo back to his combining and then I went back to the bank. Mr. Lloyd and I discussed it and this is when we decided that we probably ought to have some additional security. Then I went out to the farm and saw Leo by the house then. That's the night that I asked him if he would bring Mrs. Cwach to the bank the next morning. To get all the serial numbers and description on all the machinery and all the full description of the real estate."

When Leo and his wife went into the bank they were told by the bank officials if appellant would sign the notes, the mortgage on the Cwach homestead and her interest in the Bon Homme County land together with a chattel mortgage on the farm machinery and crops, the bank would extend indefinite credit in an effort "to work out of this situation." Mrs. Cwach then signed the notes, real estate mortgages, and chattel mortgages upon the machinery and crops. The livestock mortgages had been executed by Leo prior to October 14, 1964; however, the additional chattel mortgages upon the farm machinery and crops were executed by both Cwachs on October 14, 1964. On October 15th, the day after Mrs. Cwach signed the notes and mortgages, the bank made a further investigation and found there were only 60 cattle on the Bon Homme County farm. On November 9, 1964, the bank garnisheed the Valley State Bank of Yankton in which

appellant had deposited her own funds. On November 21, 1964, the bank, recognizing the shortage of livestock, proceeded to sell the livestock and machinery which were secured by the chattel mortgages. A total of $23,442.98 was realized from a sale of the livestock and machinery which was credited to the principal and interest. No further credit was ever extended to Mr. Cwach. On February 8, 1965, Leo J. Cwach filed a voluntary petition for bankruptcy and subsequently the trustee in bankruptcy sold his interest in 19 acres of the Yankton County land and his undivided one-half interest in the Bon Homme County land. A trustee's deed was given to the plaintiff for this real property.

Leo Cwach defaulted in this action; however, Wilma Cwach answered claiming failure of consideration and fraud in procuring her signature upon the notes and mortgages. The trial court rendered its decision in favor of the plaintiff and against the appellant Wilma Cwach for $107,297.71 foreclosing the mortgages and decreeing the premises be sold at foreclosure sale and the proceeds applied in payment of the promissory notes. She appeals.

■ When the notes were signed on October 14, 1964, the bank had the option to declare the entire balance due. The bank chose not to exercise this option, but instead procured additional collateral by promising Mrs. Cwach it would extend indefinite credit in an effort "to work out of this situation." The statement by the bank officials to Mrs. Cwach was a promise to extend credit and forbear suit which constituted a valid consideration for her execution of the notes and mortgages. Western Surety Company v. Walter, 43 S.D. 38, 177 N.W. 804. However, the bank did not keep its promise, presumedly because the shortage was greater than anticipated. These promises were intended to be and were dependant on each other. The one consideration for the other, and upon refusal of the bank to perform its promises, there was a failure of consideration for the promise of appellant.

■ SDCL 53-11-2(4) provides a contract may be rescinded by a party if the consideration for his obligation fails in whole or in part through fault of the party as to whom he

rescinds. If there is a total failure or want of consideration, rescission is excused and a party may assert failure of consideration as a bar to the action. Iowa National Bank of Ottumwa, Iowa, v. Sherman, 23 S.D. 8, 119 N.W. 1010; Richardson v. Carlis, 26 S.D. 202, 128 N.W. 168; Union National Bank of Columbus, Ohio v. Mailloux, 27 S.D. 543, 132 N.W. 168, and Coleman v. Valentin, 39 S.D. 323, 164 N.W. 67.

The foregoing South Dakota cases are in accordance with the majority rule. It is said in 17 Am.Jur.2d, Contracts, § 397, "where there is a total failure of consideration and the defendant has derived no benefit from the contract or none beyond the amount of money which he has already advanced, such total failure of consideration may be shown in bar of the action." Also see 17 C.J.S. Contracts § 129 and Cotner College v. Hester's Estate, 155 Neb. 279, 51 N.W.2d 612.

■ The trial court's decision was premised upon the theory of past consideration to Mrs. Cwach; however, the factual situation clearly establishes that the original loans were made to Mr. Cwach and not his wife. It is true that the money was deposited in a joint account on which Mrs. Cwach wrote an occasional check, and that the taxes were paid from this account upon her share of the Bon Homme County land. However, it was Mr. Cwach who borrowed the money and merely because it was placed in a joint account did not under the facts of this case result in consideration to Mrs. Cwach. There is no evidence that Mrs. Cwach had any part in procuring the loans nor that she obligated herself until the transaction on October 14th. Moreover, there is no evidence that she made any representations regarding the livestock nor that she had knowledge of any additional shortages on October 14th.

Reversed.

RENTTO, P. J., and HANSON, WINANS and WOLLMAN, JJ., concur.

WUEST, Circuit Judge, sitting for BIEGELMEIER, J., disqualified.