In re Charles Wayne **STRATTON**, d/b/a Coleman's Home Furnishings, Redfield, SD, and Sandra Elaine Stratton, Debtors.

Charles Wayne **STRATTON** and Sandra Elaine Stratton, Plaintiffs,

v.

**SIOUX FALLS PAINT AND GLASS**, a corporation, and Register of Deeds of Spink County, South Dakota, Defendants.

Bankruptcy No. 179–00097(C).
Adversary No. 180–0002.

United States Bankruptcy Court,
D. South Dakota.

Feb. 6, 1981.

J. Bruce Blake, Sioux Falls, S. D., for plaintiffs.

John C. Quaintance, Quaintance & Swanson, Sioux Falls, S. D., for defendants.

PEDER K. ECKER, Bankruptcy Judge.

This matter is before the Court on a Complaint filed by the above Chapter 13 Debtors against Sioux Falls Paint and Glass, hereinafter Creditor, to avoid the mortgage taken by Creditor on Debtors' homestead property on January 10, 1979, as a fraudulent transfer.

## FACTS

Charles Stratton has been doing business in Redfield, South Dakota, for the last three years as the sole proprietor of the business known as Coleman's Home Furnishings. Sandra is a housewife with three minor children at home. Sandra, other than being Charles' wife, has no financial, managerial, or other interest in the business.

Creditor extended credit to Charles' business on an unsecured basis. As of January 10, 1979, Charles had incurred debts on his account with Creditor in the aggregate sum

of $14,360.59. These debts were charges on the account of the business for carpet, paint and other items sold on open account to Coleman's Home Furnishings.

On January 10, 1979, two representatives of Creditor came to Charles' store. Creditor's representatives promised Charles that, in exchange for signing the real estate mortgage in the amount of $14,360.59, Creditor would not pursue collection or file lawsuits but instead would extend further credit. One of the representatives had brought along a form mortgage that he filled out by hand.

Charles and Creditor's representatives proceeded to the Spink County Branch of the First Bank of Aberdeen, where a bank officer advised Charles that he had no objection to Charles granting Creditor a second mortgage on Debtors' homestead property. Charles signed the mortgage and then called Sandra at home to advise her that two men were coming over with a mortgage for her to sign, which she did. Sandra owed Creditor no money nor had she ever ordered any merchandise from Creditor. No one advised Debtors about the effect of a waiver of a homestead provision contained in the form mortgage.

Creditor recorded the January 10, 1979, mortgage with the Register of Deeds of Spink County on January 12, 1979. Debtors filed their Chapter 13 bankruptcy petition on December 21, 1979.

## ISSUE

Debtors alleged several grounds as to why the January 10, 1979, mortgage on their homestead property should be avoided. This Court need only decide whether the real estate mortgage taken by Creditor on January 10, 1979, on Debtors' homestead property should be avoided as a fraudulent transfer pursuant to 11 U.S.C. Section 548(a)(1).

11 U.S.C. Section 548(a)(1) provides:

"The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred, where such obligation was incurred, indebted;".

■ A transfer as defined by 11 U.S.C. Section 101(40) does occur when a debtor executes and delivers to a creditor a mortgage upon his homestead property, regardless of whether that mortgage is held only as security. For purposes of this decision, a transfer did occur within one year before the date of the filing of the petition since Debtors filed their Chapter 13 petition on December 21, 1979, and executed the mortgage on January 10, 1979. Thus, the only question left to decide is whether Debtors made such transfer with actual intent to delay any entity to which Debtors were or became, on or after the date that such transfer occurred, indebted.

■ This Bankruptcy Court holds that Debtors did execute and deliver the mortgage with the actual intent to delay Creditor, and this was the express purpose of Creditor's representatives in taking a mortgage from Debtors. Thus, the second mortgage is avoidable as a Section 548 fraudulent transfer. The Court reaches this conclusion after consideration of the Bankruptcy Code provisions.

The first consideration under the fraudulent transfer provisions of Section 548(a)(1) is an examination of what the trustee may avoid. The statute explicitly gives the trustee the authority to examine into and investigate transfers and obligations incurred by the debtor within the one year preceding the filing of the bankruptcy petition. For example, where non-homestead property is the interest and the trustee has an interest in the realty, say the business building involved, then the trustee would inquire into the circumstances of the incurring of the obligation, that is the giving by debtors of the second mortgage on the property for an antecedent debt.

The Court finds that in the circumstances of this case Creditor went to the residence of Debtors in the evening with the stale bill that had remained unpaid and took a second mortgage on the property. The situation thereby created was that Debtors intended to delay this Creditor in starting repossession of the inventory or legal proceedings to enforce this account, and Debtors intended to insure their further supply of inventory. The second mortgage did delay Creditor from any of those further proceedings. And, all of this was at the express invitation of Creditor, who was attempting the traditional bankruptcy eve creditors' race to a favored position.

The fact that Debtors bring these proceedings involving homestead property causes further consideration since the philosophy of the South Dakota homestead exemption law and the philosophy of the bankruptcy law, both of which intend providing a debtor with some opportunity of a fresh start, including an exemption to his homestead. Debtors are bringing this in lieu of the Trustee acting. Under 11 U.S.C. Section 522(h) debtors are allowed to do so where the trustee does not act. Trustee did not act in this case because if he did set it aside it would only inure to the benefit of Debtors, since it involves a claimed homestead interest in the property.

Debtors have taken the action which they are entitled to do under the statute, and under the fact situation we are presented with, this Court finds that the obligation was incurred by Debtors with the actual intent to delay Creditor. In fact, they did accomplish the delay of Creditor, and Creditor invited the delay in an attempt to gain favored status. The ultimate result, of course, is that the transaction did occur within the one year and therefore is vulnerable to the attack by Debtors in this case, and the fact that successfully attacking it as a fraudulent transfer results in Debtors having a homestead exemption which they otherwise would not have, is not material to the case.

We should not omit from this rationale that the intent of Congress was to closely scrutinize transactions that take place within one year of the filing. Congress has designed the statute so that if the period of time was longer than one year, some further consideration is presumed and the creditor would achieve the favored status by passage of time in forebearance. The consideration of forebearance is established by Congress to be of more than one year's duration to constitute sufficient consideration to a creditor's improved position over other creditors. Short of that time, either the trustee or debtor may challenge the transaction.

CONCLUSION

For the foregoing reasons, this Court concludes that Debtors are entitled to avoid the second mortgage as a fraudulent transfer under the provisions of 11 U.S.C. Section 548(a)(1).

Debtors' Counsel shall submit a Judgment consistent with the foregoing. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law.