**In re Charles Wayne STRATTON, d/b/a Coleman's Home Furnishings, Redfield, SD, and Sandra Elaine Stratton, Debtors.**

**Charles Wayne STRATTON and Sandra Elaine Stratton, Appellees,**

**v.**

**SIOUX FALLS PAINT AND GLASS, a corporation, and Register of Deeds of Spink County, South Dakota, Appellants.**

Bankruptcy No. 179–00097(C).
Adv. No. 180–0002.

United States District Court,
D. South Dakota.

Sept. 30, 1982.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

Sioux Falls Paint and Glass, Inc., Creditor, appeals the decision of the Bankruptcy Court which held a second mortgage on a homestead was voidable as a fraudulent transfer under 11 U.S.C. § 548(a)(1). The Bankruptcy Court found that Charles Wayne Stratton and Sandra Elaine Stratton, Debtors, husband and wife, executed and delivered the second mortgage to creditor within one year of filing their petition in bankruptcy and acted with actual intent to delay creditor. On appeal, this Court finds, as a matter of law, that the transfer was not fraudulent, and the case is accordingly remanded.

## FACTS

Charles Wayne Stratton, debtor, operated Coleman's Home Furnishings as a sole proprietorship in Redfield, South Dakota. Sioux Falls Paint and Glass Company, creditor, extended credit to the account of debtor be sold at Coleman's Home Furnishings. Prior to January 10, 1979, debtor had incurred debts on his account in the sum of $14,369.59.

On January 10, 1979 two of creditor's representatives went to Coleman's Home Furnishings to discuss the account with Charles Stratton. Creditor's representatives sought to obtain a second real estate mortgage on debtor's home as security for the past due account. Debtor and creditor's representative conferred at debtor's bank with a representative of the bank. Following a discussion at the bank, Charles Stratton executed the mortgage.[1] Creditor's representatives then went to the Stratton home, where Sandra Stratton executed the mortgage. Creditor recorded the mortgage with the Spink County Register of Deeds on January 12, 1979. The mortgage contained a waiver of Debtors' homestead rights. Debtors filed a Chapter 13 petition in bankruptcy on December 21, 1979.

J. Bruce Blake, Sioux Falls, S. D., for plaintiffs-debtors.

John C. Quaintance, Quaintance & Swanson, Sioux Falls, S. D., for defendant-appellant Sioux Falls Paint & Glass Co.

Richard H. Battey, State's Atty., Spink County, Redfield, S. D., for appellant Register of Deeds of Spink County, South Dakota.

---

1. Charles Stratton testified that he relied on the Spink County Branch [in Redfield] of the First Bank of Aberdeen for counseling and advice pertaining to his business affairs. The bank did not hold a mortgage interest in debtors' home.

A trial was held on August 22, 1980, at which time the Bankruptcy Court heard testimony from the creditor's manager of operations and credit and Charles and Sandra Stratton. Based on that testimony and the exhibits received at trial, the Bankruptcy Court filed a memorandum decision and issued an order avoiding the real estate mortgage obtained by creditor. The Bankruptcy Court found, however, that "creditor's representatives promised Charles [Stratton] that, in exchange for signing the real estate mortgage in the amount of $14,-360.59, Creditor would not pursue collection or file lawsuit but instead would extend further credit."

Creditor has appealed, asserting first that the transfer of the mortgage was done to enable debtors to protect their credit standing, continue in business and rehabilitate themselves and second that 11 U.S.C. § 548(a) requires a showing of fraudulent intent and no actual intent was found in this case. Creditor also urges reversal because the decision of the Bankruptcy Court will force creditors to deal harshly with debtors and therefore will be detrimental to the entire debtor-creditor relationship.

Debtors, while urging that the decision of the Bankruptcy Court avoiding the mortgage as a fraudulent transfer be affirmed, do not embrace the reasoning of the Bankruptcy Court. Debtors argue that it was error for the Bankruptcy Court to find that "Creditor's representatives promised Charles [Stratton] that, in exchange for signing the real estate mortgage in the amount of $14,360.59, Creditor would not pursue collection or file lawsuits but instead would extend further credit." Debtors argue that pursuant to 11 U.S.C. § 548(a)(2)(A)–(B)(i) the mortgage is voidable as a fraudulent transfer as to Sandra Stratton. Debtors continue, maintaining that upon finding the mortgage voidable as to Sandra Stratton, it follows that the mortgage is voidable pursuant to SDCL 43–31–7 which states a mortgage as to a homestead signed by only one spouse is absolutely void.

## I.

The Bankruptcy Court decided this case under § 548(a)(1) of Title 11 of the United States Code. Section 548(a)(1), covering fraudulent transfers, provides:

(a) The trustee [2] may avoid any transfer of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted. . . .

A transfer is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." 11 U.S.C. § 101(40). By executing a mortgage in favor of creditor, debtors clearly transferred an interest in their property. The transfer occurred within one year of debtor's filing a petition in bankruptcy. Debtors, as the parties seeking to avoid the transfer, carried the burden of proving that this transfer can be avoided. *General Kontrolar Co. v. Allen,* 124 F.2d 123 (6th Cir. 1942). To succeed, they needed to prove that they transferred the interest with the actual intent element of the statutory section.

■ Much of the problem in this case must be attributed to confusion in the meaning of the words "actual intent to hinder, delay or defraud." 11 U.S.C. § 548(a)(1). The Bankruptcy Court made a factual finding that debtors transferred the mortgage to creditor with the actual intent of postponing the beginning of proceedings to enforce the account. Certainly, actual intent is a question of fact, *Nicklaus v. Peoples Bank & Trust Co., Russellville, Ar-*

---

2. If the Trustee declines to attempt to avoid the transfer under § 548(a)(1), the debtor may fill the trustee's shoes and attempt to avoid the transfer. 11 U.S.C. § 522(h).

*kansas,* 369 F.2d 683 (8th Cir. 1966), and factual findings should not be disturbed unless clearly erroneous. *In re Peoria Braumeister Co.,* 138 F.2d 520 (7th Cir. 1943). While this Court has limited power to review factual findings of the Bankruptcy Court, this Court also has a responsibility to ensure that the lower court applied the correct legal standards to the facts. "A finding of fact is the assertion that a phenomenon has happened . . . independent of . . . any assertion as to its legal effect." L. Jaffe, Judicial Control of Administrative Action 548 (1965).

A determination of the intent of debtors when they transferred the mortgage interest to creditor is a task for the trier of fact. Whether that factual finding has any legal effect, however, is subject to review on appeal. The legal effect is found in the construction of the relevant statutory language. The reviewing court must determine whether the trial court applied the proper legal standard to the facts. *See United States v. Singer Manufacturing Company,* 374 U.S. 174, 193, 83 S.Ct. 1773, 1783, 10 L.Ed.2d 823 (1963). Thus, the question is not simply whether debtors transferred an interest with an intent to delay creditors, but rather whether the actual intent found by the Bankruptcy Court was an "intent to hinder, delay, or defraud," within the meaning of § 548(a)(1). That question is a question of law.

■ The findings of the Bankruptcy Court were as follows:

. . . Creditor went to the residence of the Debtors in the evening with the stale bill that had remained unpaid and took a second mortgage on the property. The situation thereby created was that Debtors intended to delay this Creditor in starting repossession of the inventory or legal proceedings to enforce this account, and Debtors intended to ensure their further supply of inventory. The second mortgage did delay Creditor from any of these further proceedings. And all of this was at the express invitation of Cred-

itor, who was attempting the traditional bankruptcy eve Creditor's race to a favorite position.

*In re Stratton,* 8 B.R. 674 (Bkrtcy.D.S.D. 1981).

Clearly, "[w]here . . . the debtor is motivated by a purpose to protect his credit standing, to continue in business, and to rehabilitate himself financially, his action in making transfers has often been held not to be fraudulent in fact notwithstanding his insolvency at the time of entering such transactions." 4 Collier, *supra,* at ¶ 548.-02[5]. *See Blackman v. Bechtel,* 80 F.2d 505 (8th Cir. 1935). Vain hopes of remaining afloat appear to have motivated debtor in this case. The Bankruptcy Court found that these hopes masked an intent to delay creditor. In stating the facts, however, the Court found that it was creditor who went to debtor with an offer to delay proceedings in return for security on the debts owed by debtor. Since § 548 governs fraudulent transfers, the statutory provisions should be construed with the overall purpose of this section in mind.

Fraudulent transfers occur usually when a debtor attempts to protect himself from losses that he would otherwise suffer by going through bankruptcy. "A financially troubled debtor, surrounded by creditors seeking to use his property to satisfy their claims, will sometimes attempt to place his property outside the reach of creditors by engaging in transactions which operate to prejudice their legal or equitable rights." Macey, Preferences and Fraudulent Transfers under the Bankruptcy Reform Act of 1978, 28 Emory L.J. 685, 702–03 (1979). The relationship between debtor and creditor in this case is exactly the reverse. A troubled debtor has taken his property, which could not satisfy the claim of any creditor because exempt, and put it within reach of one creditor by transferring an interest in it and by waiving the exemption on it. Such a transfer may well be preferential with respect to other creditors, but there is no showing that it is fraudulent.[3]

---

**3.** Since the transfer in question occurred more than ninety days prior to the filing of the bank-

ruptcy petition, the transfer is preferential in

Although section 548(a)(1) employs "hinder" and "delay" as well as "defraud" to describe the kinds of transfers it covers, this Court finds that the kinds of transfers it is meant to catch are the kinds described by Professor Macey. The language "actual intent to hinder, delay, or defraud" must be interpreted consistently to mean that the hinderance or delay is fraudulent. *See Coder v. Arts,* 213 U.S. 223, 9 S.Ct. 436, 53 L.Ed. 772 (1909). The debtor—and it is the debtor's intent which is relevant to § 548(a)(1)—must attempt to frustrate or confound a creditor's attempts to use property to satisfy a debt that creditor could use absent the transfer. Agreeing to a creditor's plan to delay proceeding against the debtor is not "intent to delay" within the meaning of § 548(a)(1). The Bankruptcy Court's holding that the debtors executed and delivered the second mortgage on their house to creditor with actual intent to delay must therefore be overruled.

## II.

In asking this court to affirm the Bankruptcy Court's decision, debtors argue that the Court below reached the right result by the wrong route. Debtors' theory is that the transfer of the mortgage interest is voidable as to Sandra Stratton under 11 U.S.C. § 548(a)(2)(A)–(B)(i). Those subsections require setting aside transfers as fraudulent if the transfer was for less than reasonably equivalent value and occurred while the debtor was insolvent or became insolvent because of the transfer. If the transfer is void as to Sandra Stratton, debtors argue that the transfer of the mortgage must also be invalid as to Charles Stratton under South Dakota law. Under Section 43–31–17 of the South Dakota Compiled Laws, a homestead interest in realty may be encumbered by a real estate mortgage only where both husband and wife execute the mortgage.

■ Appellee is free to raise, without making a cross appeal, any matter appearing in the record below, even though the appellee attacks the reasoning of the lower

fact only. It is not preferential under the dic-

court. *Massachusetts Mutual Life Insurance Company v. Ludwig,* 426 U.S. 479, 480, 96 S.Ct. 2158, 2159, 48 L.Ed.2d 784 (1976) (citing *United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924)). Appellate courts following this rule have stressed that the new arguments raised on appeal must be consistent with the record below. *Lucas v. American Manufacturing Co.,* 630 F.2d 291, 294 (5th Cir. 1980); *Chapman v. Commissioner of Internal Revenue,* 618 F.2d 856, 862 (1st Cir. 1980); *United States v. Litton Systems, Inc.,* 573 F.2d 195, 200 (4th Cir. 1978).

■ Debtors here, however, are doing more than raising new legal theories. They are also attacking the factual basis for the trial court's finding. The key to debtors' argument, as debtors themselves state, is that the Bankruptcy Court erred by finding that creditor agreed to refrain from proceeding against debtors to satisfy their loans in exchange for the security of the debtors' second mortgage. In their brief advancing their argument on appeal, debtors quote from the trial transcript a part of the testimony of one of creditor's agents. The quoted testimony includes an assertion by the witness that the reason creditor was asking Mr. Stratton to sign the mortgage was that "we had gone along a long time, and we needed to get something set up as far as security so that we would be secured on it ..." (Tr. 11).

Although the transcript also includes testimony that indicates that neither Mr. nor Mrs. Stratton may have appreciated the full import of the document they signed, there is evidence to support the trial court's findings. Under the principles outlined in the preceding section of this opinion, this Court must respect the factual findings of the court below unless those findings are clearly erroneous. Given the testimony that debtors themselves quote, the findings of the Bankruptcy Court are not clearly erroneous. It must be taken as fact that the mortgage interest was transferred in ex-

tates of 11 U.S.C. § 547.

change for the creditor's promise not to proceed against debtors' property.

The legal effect of the Bankruptcy Court's finding is to preclude debtors' argument. The Bankruptcy Court found that Mrs. Stratton did not owe creditor money at the time of the transfer, and that she had never ordered any merchandise from creditor. Mrs. Stratton therefore made a contemporaneous exchange with creditor. For the value of her joining the mortgage instrument, she received creditor's promise to forebear suit against her husband.

Debtors assert in passing that Sandra Stratton did not receive reasonably equivalent value for her execution of the mortgage. Debtors only challenge to the value received by Mrs. Stratton is their challenge to the Bankruptcy Court's finding that she in fact executed the mortgage in exchange for creditor's promise to forebear suit. The question of equivalency of value is not presented on this appeal. Debtors' sole contention is not that the value Mrs. Stratton received was not reasonably equivalent but that she received *no* value whatever. Even though the record before this Court does not present the issue for review, were it presented, there appears little question that the exchange of value was reasonably equivalent as required by Section 548(a)(2)(A). This result would obtain regardless of whether Sandra Stratton was actually a co-owner of the Stratton homestead.

If Mrs. Stratton was not actually a co-owner of the homestead, her joining the mortgage instrument as required by SDCL § 43–13–17 was basically a formality in which she surrendered no estate in land. *Somers v. Somers,* 27 S.D. 500, 131 N.W. 1091 (1911). The purpose of the homestead law is to ensure that one spouse does not alienate the homestead without the concurrence of the other spouse. *O'Neill v. Bennett,* 43 S.D. 569, 181 N.W. 97 (1921). That purpose has been served in this transfer. The value that the Bankruptcy Court found in the Creditor's promise is reasonably equivalent to the formality of joining of the mortgage deed.

If, on the other hand, Mrs. Stratton was co-owner of the homestead, the finding that she mortgaged the home in return for a promise of forebearance by Creditor still supports the mortgage. The South Dakota Supreme Court has upheld the mortgage of a homestead by a co-owner wife who signed the mortgage in return for Creditor's forebearance of suit against her husband. *American State Bank v. Cwach,* 85 S.D. 562, 187 N.W.2d 107 (1971). Although South Dakota law does not necessarily state the rights of parties under the federal Bankruptcy Code, this Court finds the reasoning of the South Dakota Supreme Court persuasive and accepts that an exchange like the one involved in *Cwach* would be for reasonably equivalent value.

The status of Mrs. Stratton as owner of the homestead makes no difference to the determination of the question on appeal. This Court holds that Sandra Stratton's transfer of a mortgage interest in the Stratton homestead to Creditor was made for reasonably equivalent value.

For the reasons stated in this opinion, it is concluded that the transfer made by debtors was, as a matter of law, not fraudulent and the second mortgage obtained by creditor is valid under Section 548(a). This case is remanded to the Bankruptcy Court for further proceedings not inconsistent with this opinion.