**BANKWEST, INC., a South Dakota corporation, Kadoka, South Dakota, Plaintiff–Appellant,**

v.

**Laverne L. VALENTINE, Federal Land Bank of Omaha and Stanley County, a political subdivision of the State of South Dakota, Defendants–Appellees.**

No. 16501.

Supreme Court of South Dakota.

Argued Nov. 28, 1989.

Decided Feb. 14, 1990.

J. Crisman Palmer and Daniel E. Ashmore of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for plaintiff and appellant.

David L. Bergren of Bergren & Duffy, Fort Pierre, for defendants and appellees.

WUEST, Chief Justice.

Bankwest, Inc., (Bank), brought an action against Laverne Valentine (Laverne) seeking payment of a promissory note executed in favor of the Bank by Laverne's son, Bob Valentine (Bob), and co-signed by Laverne. Laverne raised several affirmative defenses in this action and also submitted a counterclaim against the Bank seeking damages on the grounds of deceit. This case was submitted to a jury which returned a verdict in favor of Laverne on the Bank's claim, and in favor of the Bank on Laverne's counterclaim. Judgment was entered in accordance with the verdict. Bank appeals this judgment. We affirm.

Laverne's son, Bob, is an electrician. At the time of the transactions in question, he owned and operated a business called Martin Electric. Bob's wife, Deborah Valentine (Deborah), was also a part owner of this business. On many occasions, Bob and Deborah, d/b/a Martin Electric, obtained loans from the Bank for various business purposes. Many times it was necessary for Laverne to co-sign certain notes with Bob and Deborah so that Martin Electric could obtain further loans. By the end of 1985, several years after Martin Electric began operating, it was estimated that Laverne had guaranteed or co-signed approximately $150,000 worth of loans for Martin Electric.

In January of 1986, Martin Electric had a large contract on a school project and it was in need of additional capital to complete this contract. At that time, Martin Electric's financial condition was poor. It was unable to collect its accounts receivable and it had accumulated a large amount of debt. Bob inquired about an additional loan from the Bank and was informed that the Bank would need more collateral before it would lend any more money to Martin Electric. As a result, Bob once again sought the assistance of Laverne, and she agreed to help.

On January 29, 1986, Laverne and Bob met with a Bank representative at the Bank's office in Pierre, South Dakota. According to Laverne and Bob, the sole purpose of meeting with the Bank at this time

was to obtain operating capital from the Bank so that Martin Electric could complete its contract on the school project. They also testified that the central focus of the discussions with the Bank concerned the amount of money Martin Electric needed to complete the school project. At this meeting, the Bank produced a computer print out, with numbers allegedly provided by Bob, listing the projected earnings and expenses of Martin Electric for the following twelve months. This document indicated that Martin Electric would need approximately $129,000 in order to complete the school project. As a result of the discussions that took place, Laverne co-signed a promissory note executed by Bob in the Banks favor for the amount of $130,000. She also signed and delivered a mortgage to the Bank covering certain property she owned in South Dakota. After this had been done, the parties concluded the meeting.

The record indicates that Deborah was to be the last person to sign the note. The very next day after Bob and Laverne's meeting with the Bank, Deborah went to the Bank to sign the note and to obtain funds from this note so that she could pay the overdue bills of Martin Electric. Although Deborah did sign the note, the Bank refused to give her any operating funds from this note. The record indicates that the Bank took approximately $117,000 of the proceeds from the note and applied it to debts owed to the Bank by Martin Electric. The proceeds which remained from this note were deposited in Martin Electric's bank account. This account, however, was overdrawn in an amount that exceeded the value of the remaining proceeds from the note. As a result, Martin Electric did not receive any funds outright from this note. Rather, the money was simply used to pay off the bank debts of Martin Electric.

One year later, Martin Electric filed for bankruptcy. The Bank, then unable to collect its debt from Martin Electric, brought suit against Laverne seeking payment of the note in question. Laverne denied liability on the note, raising the affirmative defenses of fraud, mistake of fact and failure

of consideration. She also submitted a counterclaim against the Bank on the grounds of deceit. This case then proceeded to trial. During the trial, the Bank moved for a directed verdict at the close of Laverne's case and also after both parties had rested. Both motions were denied. This case was submitted to a jury and a verdict was returned against the Bank on its claim against Laverne, and against Laverne on her counterclaim against the Bank. The Bank then moved for a judgment notwithstanding the verdict or in the alternative, for a new trial. This motion was also denied. On appeal, the Bank contends the trial court erred in denying the aforementioned motions.

■ We first address the issue of whether the trial court erred in denying the Bank's motions for directed verdict. A motion for directed verdict under SDCL 15–6–50(a) questions the legal sufficiency of the evidence to sustain a verdict against a moving party. *Carlson v. First Nat. Bank,* 429 N.W.2d 463, 466 (S.D.1988); *Nelson v. Schroeder Aerosports, Inc.,* 280 N.W.2d 107, 108 (S.D.1979). Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. *Sabag v. Continental South Dakota,* 374 N.W.2d 349, 355 (S.D.1985); *Smith v. Halverson,* 273 N.W.2d 146, 149 (S.D.1978). The evidence must be accepted which is most favorable to the nonmoving party, and the trial court must indulge all legitimate inferences therefrom in his favor. *Carlson, supra.* If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. *Id.* The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse. *Lytle v. Morgan,* 270 N.W.2d 359, 360 (S.D. 1978).

In the present case, Laverne has raised several affirmative defenses with regard to the Bank's complaint. However, for the purposes of this opinion, we deem it necessary to discuss only the issues concerning Laverne's affirmative defense of failure of consideration. In regard to the Bank's allegation that the trial court erred in deny-

ing its motions for directed verdict, we conclude that at the time these motions were made, sufficient evidence existed to support Laverne's defense of failure of consideration. Therefore, we hold that the trial court did not err in denying these motions.

■ Consideration for a contract may not be other than that which is accepted or regarded as such by both parties. *Richter v. Industrial Finance Co., Inc.,* 88 S.D. 466, 221 N.W.2d 31 (1974). In the present case there is much dispute as to what constituted consideration for Laverne's agreement to sign and deliver a mortgage and a promissory note to the Bank. Laverne and Bob both testified that the mortgage and note were executed to the Bank in consideration for the Bank's promise to provide operating capital to Martin Electric. According to Bob, the Bank specifically told him and Laverne that after the mortgage was cleared by the Bank, the Bank would be able to give Martin Electric more operating funds. Additionally, Laverne testified the Bank informed her that the money acquired by way of the promissory note was to be furnished so Bob could complete the school project. She further testified that the whole discussion which took place when the parties met in Pierre was to the effect that the Bank was going to provide Martin Electric with operating capital in exchange for the execution of the promissory note and the mortgage. Although Bank argued that its forbearance from filing suit on the notes due was consideration for the note, the trial court, under these circumstances, was bound to view the evidence most favorably to Laverne and to indulge all legitimate inferences in her favor. Therefore, based upon the evidence presented, the trial court should have concluded that the Bank's promise to provide operating capital to Martin Electric was the consideration for Laverne's promise to execute the note and mortgage in favor of the Bank.

Given this conclusion as to consideration, we believe that reasonable minds could differ as to whether a failure of consideration existed in this case. In *American State Bank v. Cwach,* 85 S.D. 562, 187 N.W.2d 107 (1971), we set forth the following rule regarding failure of consideration:

... where there is a total failure of consideration and the defendant has derived no benefit from the contract or none beyond the amount of money which he has advanced, such total failure of consideration may be shown in bar of the action.

If any benefit was derived by the defendant (Laverne), it must, of course, be one that was offered and received by the parties as an element of the contract in order for the plaintiff (Bank) to defeat the defendant's claim of failure of consideration. *See, Richter, supra,* 88 S.D. at 472, 221 N.W.2d at 34. Thus, in the present case, the benefit derived by Laverne must be in the form of operating capital for Martin Electric since that is the only benefit offered by the Bank and accepted by Laverne as an element of the contract (when viewing the evidence most favorably to Laverne).

At the time when the Bank made its motions for directed verdict, no evidence had been established which clearly indicated that Martin Electric received operating capital from the Bank on the basis of the note in question. In fact, the evidence pointed to the contrary. Deborah testified that one day after Laverne and Bob had signed the note, she went to the Bank and signed the note herself. She then requested funds for the operating expenses of Martin Electric. The Bank flatly refused this request, indicating that all of the funds from the note had been used to satisfy the debts of Martin Electric. Considering this evidence, reasonable minds could certainly differ as to whether a total failure of consideration existed in this case. The Bank promised to provide operating funds to Martin Electric, and the evidence indicated that none were provided. Therefore, we do not believe the trial court erred in refusing to grant Bank's motions for directed verdict.

■ The second issue raised by the Bank concerns whether the trial court erred in denying Bank's motion for judgment notwithstanding the verdict. In reviewing a

trial court's ruling on a motion for judgment notwithstanding the verdict, this court must view evidence in a light most favorable to the jury verdict, giving the prevailing party the benefit of every inference and resolving in its favor every controverted fact. *Carlson v. First Nat. Bank*, 429 N.W.2d 463, 467 (S.D.1988); *Lukens v. Zavadil*, 281 N.W.2d 78, 80 (S.D. 1979). Then, without weighing the evidence, we must decide if there is evidence which would have supported or did support a verdict. *Corey v. Kocer*, 86 S.D. 221, 226–27, 193 N.W.2d 589, 593 (1972). The same grounds may be asserted as a basis for directed verdict and judgment notwithstanding the verdict. *Carlson, supra.* Bank asserts the same grounds for judgment notwithstanding the verdict as it did for its motions for directed verdict.

In the present case, the jury rendered a general verdict in favor of Laverne. As Laverne raised several affirmative defenses to the Bank's claim, it is difficult to determine how the jury reached its verdict. Under such circumstances we have indicated that if a verdict is susceptible to more than one construction, the construction which sustains the verdict must be applied. *Fjerstad v. Sioux Valley Hosp.*, 291 N.W.2d 786, 788 (S.D.1980). In the present case, we believe the construction which sustains the verdict concerns Laverne's defense of failure of consideration.

In determining if evidence existed which would support a jury's verdict for Laverne based upon failure of consideration, we must naturally determine what the consideration was in the contract in question. In giving Laverne the benefit of every inference and resolving all controverted facts in her favor, we must conclude that the Bank promised to provide operating capital to Martin Electric in consideration for Laverne's execution of the note and mortgage to the Bank. Having reached this conclusion, we must now determine, without weighing the evidence, whether there is evidence which would support a jury's verdict in favor of Laverne based upon failure of consideration.

In the present case, the record reveals that one day after the note in question was executed by Bob and Laverne, Deborah went to the Bank to sign the note and to obtain funds from the Bank to cover the operating expenses of Martin Electric. Deborah signed the note shortly after she arrived at the Bank. However, after having obtained Deborah's signature on the note, the Bank refused to give Deborah any funds. The record reflects that in response to Deborah's request for operating funds, the Bank representative replied: "Well do you expect me to loan you any more money? We can't loan you any more money, this is cut and dried this way." As a result of the Bank's conduct, Deborah left the Bank with no money to pay the overdue bills of Martin Electric. This evidence strongly indicates that the Bank totally failed in its promise to provide operating funds to Martin Electric.

The Bank has argued that it did not totally fail to provide operating funds to Martin Electric because the proceeds which remained from the note after the Bank had paid itself off were deposited in the bank account of Martin Electric. While this may be true, the record indicates that these funds were never available to Martin Electric because they were deposited in an account which was overdrawn in an amount that exceeded the value of the remaining proceeds.[1] In essence then, the Bank used the funds from the note in question to pay off the bank debts of Martin Electric. As a result of this conduct, Martin Electric did not receive any funds from the Bank to

---

1. The following testimony was elicited from the bank representative who dealt with the Valentines throughout the transactions in question:

    Q: Is it your testimony that the next day (January 30, 1986), they (Bob and Deborah) had money in their account to pay bills with, that they could write checks and pay bills with?
    A: No.

    Q: Okay, your testimony is that they did not have money that they could pay bills with the next day in their checking account?
    A: We deposited $13,500 in their account. They may have already spent that amount.
    Q: So they did not have $13,500 with which to pay bills when Debbie talked to you?
    A: No.

cover the operating expenses that were discussed by the parties when they met at the Bank on January 29, 1986.

Other evidence also exists which indicates that the Bank totally failed in its promise to provide operating funds to Martin Electric. Both Bob and Deborah testified that as a result of the Bank's refusal to provide operating funds, Martin Electric was forced to cut costs and reduce labor. In fact, Bob testified that shortly after the note in question was executed, he had to dismiss his only two assistants because he could not afford to pay them. Furthermore, Deborah testified that after the execution of the note, Martin Electric did not pay its bills because it had no money. The record also reflects that Deborah's parents had to support Bob and Deborah after the execution of the note because Bob and Deborah had no money. The record further reflects that Laverne also continued to loan money to Bob and Deborah after the note was executed so that Martin Electric could continue its operations. All of the aforementioned evidence indicates that the Bank totally failed in its promise to provide operating funds to Martin Electric. Thus, it is clear that there is evidence to support the jury's verdict on the basis of failure of consideration. Hence, we hold that the trial court did not err in denying Bank's motion for judgment notwithstanding the verdict.

■ Bank has also alleged that a new trial should have been granted on the grounds of insufficient evidence to support the verdict and also on the grounds that the jury's verdict was a product of passion or prejudice. We have stated that the trial court has broad discretionary power in granting or denying a motion for new trial, and generally, that order will not be disturbed absent a clear showing of abuse of discretion. *Hepper v. Triple U Enterprises Inc.*, 388 N.W.2d 525, 530 (S.D.1986). In the present case, the evidence is sufficient to support Laverne's defense of failure of consideration. Since Laverne proved that a total failure of consideration existed in this case, she is entitled to rescind the contract relating to the note in question and the Bank's action against Laverne on the basis of that note is barred. *American State Bank v. Cwach, supra.* As a result, we must conclude that there is sufficient evidence to support the verdict. Furthermore, having closely reviewed the record, we cannot conclude that the jury's verdict was a product of passion and prejudice. For these reasons, we hold that the trial court did not abuse its discretion in denying the Bank's motion for a new trial.

Judgment affirmed.

HENDERSON, J., concurs.

SABERS, J., concurs specially.

MORGAN, J., and FOSHEIM, Retired J., dissent.

FOSHEIM, Retired J., sitting for MILLER, J., disqualified.

SABERS, Justice (concurring specially).

I agree with the majority that the Bank is not entitled to benefit from its misrepresentation. Therefore, the Bank is not entitled to any collateral, and the mortgage against Laverne's real property should be cancelled. Laverne is entitled to be restored to the same position she occupied prior to the Bank's improper action. However, she is not entitled to a windfall. Cancellation of her pre-existing indebtedness would constitute a windfall and she is *not* entitled thereto. Therefore, we should make it clear that the Bank may pursue a money judgment for the amount of the pre-existing indebtedness. Otherwise, problems similar to those that existed in *Bank of Hoven v. Rausch*, 449 N.W.2d 263, 267 (S.D.1989) (Sabers, J., dissenting), will exist here.

FOSHEIM, Retired Justice (dissenting).

The underlying notes, many of which were co-signed by Laverne, are not disputed. Only the last note for $130,000 is challenged. That note apparently was a renewal of a portion of the existing debt that was then due and owing following extensive discussions between a bank officer and Bob Valentine. As had been the practice in the past with each line of credit,

BankWest used the proceeds of the $130,-000 note to pay off existing accrued notes except two notes which were separated by agreement of the parties. The record reveals no misrepresentation from Bank to Laverne. In fact, her alleged deceit rests on an absence of any representation to her from Bank. All representations to Laverne came from her son, Bob. He needed her as a co-signer, but was not acting as an agent of Bank.

It appears undisputed that Bank simply followed its previous practice with no deceit towards Laverne. The trial court accordingly should have granted the Bank's motion for judgment notwithstanding the verdict.

I am authorized to state that Justice MORGAN joins in this dissent.