Wayne WASSERBURGER, d/b/a South-
ern Hills Trenching & Construction, a
sole proprietorship, Plaintiff and Ap-
pellant,

v.

CONSOLIDATED MANAGEMENT
CORPORATION, a Nevada
Corporation, Defendant,

and

John T. Hughes, Garnishee
and Appellee,

and

Recovery Investment Associates, a Part-
nership, Intervenor and Appellee.

No. 16957.

Supreme Court of South Dakota.

Argued May 21, 1990.

Decided Aug. 8, 1990.

Jay C. Shultz of Lynn, Jackson, Shultz & Lebrun, Rapid City, for plaintiff and appellant.

John T. Hughes, Sturgis, pro se.

Gary R. Richards of Richards, Hood & Brady, Spearfish, for intervenor and appellee.

MILLER, Justice.

In this appeal we affirm in part and reverse in part, holding that the trial court (1) did not abuse its discretion in finding excusable neglect so as to allow a garnishee to file a late answer, and (2) inappropriately terminated an action without motion or notice.

## FACTS/PROCEDURAL HISTORY

In January, 1987, Wayne Wasserburger began leasing certain heavy equipment to Consolidated Management Corporation (CMC) for use in its sewage ash operation near Igloo, South Dakota. CMC failed to make the lease payments, which resulted in suit being filed against it by Wasserburger. In July, 1988, a jury awarded Wasserburger approximately $78,000. Eventually, Wasserburger attempted to execute on certain property owned by CMC in this state to satisfy the judgment; however, he was unsuccessful.

During all material times, CMC was represented by attorney John Hughes of Sturgis, South Dakota. Some time subsequent to July, 1988, a trust agreement was entered into between Hughes, on behalf of CMC, and Recovery Investment Associates (RIA), whereunder RIA apparently conditionally advanced $350,000 to be placed in Hughes' trust account for the benefit of CMC's in-state creditors.

In May, 1989, Wasserburger, through his attorney Jay Shultz, served a "Garnishee Summons/Continuing Lien" on Hughes as garnishee and attorney for CMC. Ultimately, pursuant to the garnishment proceedings, a sale of railroad property owned by CMC was ordered, the proceeds from which were supposedly to satisfy Wasserburger's judgment. Pursuant to a motion by Hughes, the day before the sale was scheduled to take place, a temporary restraining order was issued prohibiting the sale of the railroad property. An affidavit, signed by August Albers, the South Dakota area supervisor for CMC, alleged several reasons why the temporary restraining order should be issued. Most importantly, for the purpose of this appeal, he stated that Hughes had sufficient money in his trust account to satisfy Wasserburger's judgment. (Shultz indicated in his supplemental affidavit, that Hughes had represented to him that the trust account contained $350,000 and was to be used to pay in-state creditors of CMC.)

In July, 1989, Wasserburger made a motion for default judgment against garnishee Hughes alleging that Hughes was in default because he had failed to timely answer the garnishee summons. A hearing was scheduled on that motion for July 24, 1989.[1]

A few days before the hearing, two additional motions were filed. Hughes made a motion to enlarge the time to answer the garnishee summons on the grounds of excusable neglect. Gary Richards, attorney for RIA, made a motion for intervention, alleging that RIA has an interest in the $350,000 located in Hughes' trust account. Specifically, Richards alleged in his affidavit that certain conditions in the trust agreement had not been met, thereby allowing RIA to retain its exclusive interest

---

1. During this period of time, other legal actions regarding Wasserburger's judgment and the $350,000 were taking place in the Eighth Judicial Circuit where the funds were being held by Hughes. On July 11, 1989, pursuant to a motion by Shultz, a permanent injunction was issued in that circuit by Judge Moses prohibiting the removal of the funds from Hughes' trust account until the garnishment action was concluded.

in the funds.[2] Further, on July 11, 1989, Hughes made an affidavit which alleged that as garnishee he had no property in his possession or under his control belonging to CMC and therefore he was not liable as garnishee. His claim was that the funds belonged to RIA under the trust agreement.

On July 24, 1989, the hearing was held before Seventh Circuit Judge Davis. At the conclusion of the hearing, he made the following orders: 1) Wasserburger's motion for default judgment against garnishee Hughes was denied; 2) Hughes was allowed five working days to answer the garnishee summons; 3) RIA was permitted to intervene; and, 4) pursuant to his motion made at the hearing, Hughes was allowed to withdraw as counsel for CMC. Additionally, Judge Davis *sua sponte* ordered that the money held in trust by Hughes "belonging to RIA" be released and that the garnishment action with respect to the trust funds was moot (no motion was made by any of the parties requesting an order of this nature or one similar thereto).[3] These orders were memorialized in writing on the same day; however, the written order additionally provided that the permanent injunction issued in the Eighth Judicial Circuit by Judge Moses was also moot.

On August 7, 1989, pursuant to a motion of August 1, Judge Davis allowed Richards to withdraw as counsel for RIA.

On August 30, 1989, believing that the garnishment action was still pending, Wasserburger began filing various documents of discovery, which specifically addressed the trust funds. Pursuant to that action, Hughes and Richards made a motion for a protective order and Rule 11 sanctions. Because all the judges in the Seventh and Eighth Judicial Circuits had, in the meantime, disqualified themselves, the case was

assigned to Judge Heck of the Sixth Judicial Circuit. After a hearing, Judge Heck determined that, in view of Judge Davis' order, no action was pending against garnishee Hughes or RIA. Consequently, he issued a protective order, but denied sanctions. Wasserburger has appealed the orders of both Judge Davis and Judge Heck.

## DECISION

Wasserburger has raised six specific issues. Because of our holding below we need to address only two of them.

## ISSUE I

### WHETHER THE TRIAL COURT ERRED IN CONCLUDING THAT EXCUSABLE NEGLECT EXISTED TO JUSTIFY GARNISHEE'S FAILURE TO ANSWER THE GARNISHEE SUMMONS.

■ Wasserburger contends that garnishee Hughes failed to timely file an answer to the garnishee summons and that a default judgment should have been entered against him. Hughes contends that the circuit court properly excused his failure to timely answer the summons because when he filed his motion to extend time to answer, it was accompanied by an affidavit denying liability. Additionally, he asserts that Judge Davis found (this finding was not made in writing but was made orally on the record at the time of the July 24, 1989, hearing) that some good-faith efforts had been made to negotiate a settlement in the matter, as well as the existence of an intervening restraining order issued in the principal case.

■ Wasserburger had sought default

---

**2.** The trust agreement was conditioned upon the issuance to CMC of a permit from the State Department of Water and Natural Resources which would allow CMC to process sewage ash stored at its facility near Igloo, South Dakota. That permit was never issued.

**3.** Although Judge Davis ordered the garnishment action moot based upon the failure of the condition in the trust agreement as determined

by Eighth Circuit Judge Moses, he commented that he believed that some "shenanigans" were going on concerning the trust agreement and the funds dealing therewith. In his ruling from the bench, indicating the garnishment action was moot and additionally stating that it was "done and terminated," Davis stated that Shultz should start a new action with the proper parties.

judgment pursuant to SDCL 21–18–39 [4] and SDCL 15–6–55(b).[5] These statutes are a matter of discretion with the trial court and rulings made thereon will not be set aside absent a showing of abuse of discretion. *Gilliland v. Courtesy Motors, Inc.*, 89 S.D. 273, 232 N.W.2d 828 (1975). In *War Finance Corporation v. Byrum*, 49 S.D. 208, 206 N.W. 1005 (1926), we held that it is proper to vacate default judgments and permit the garnishee to answer "if by any reasonable construction of his showing his neglect to answer may be excused." 49 S.D. at 214, 206 N.W. at 1007.

■ Although in the present case a default judgment had not been entered, the same rationale applies. Each case must depend on its own particular facts. 49 C.J.S. *Judgments* § 334 (1947); *see also Credit Management Service, Inc. v. Wendbourne*, 76 S.D. 80, 72 N.W.2d 926 (1955); *Gunvordahl v. Knight*, 73 S.D. 638, 47 N.W.2d 561 (1951).

The facts and circumstances here indicate that garnishee Hughes filed an affidavit denying liability alleging a meritorious defense. Furthermore, the facts reflect that Hughes understood that Shultz would not pursue the garnishment pending determination of the status of the funds in Hughes' trust account. Also, Hughes had obtained a temporary restraining order halting the sale of certain CMC property and further was uncertain as to his continued representation of CMC due to fee payment problems.

We agree that excusable neglect existed. No abuse of discretion has been shown by the court's refusal to grant a default judgment or in extending the period of time to answer the garnishee summons. Those orders of Judge Davis are affirmed.

**4.** SDCL 21–18–39 provides:

If any garnishee, except the state, having been duly summoned, shall fail to serve his answer as required by this chapter the court *may* render judgment against him for the amount of any judgment, including costs, which the plaintiff shall recover in the principal action, together with the costs of the garnishee action. (Emphasis added.)

## ISSUE II

WHETHER THE TRIAL COURT CORRECTLY DETERMINED THAT THE GARNISHMENT ACTION WAS RENDERED MOOT AS TO THE $350,000 HELD BY HUGHES UNDER THE TRUST AGREEMENT.

■ This issue is the heart of Wasserburger's appeal. He argues that Judge Davis' order was, in effect, a summary judgment or dismissal in favor of the garnishee and RIA regarding the $350,000. We agree.

Four motions were presented to the court: Wasserburger's motion for a default judgment; garnishee's motion to extend time to answer; RIA's motion to intervene; and Hughes' motion to withdraw as counsel for CMC.[6] Three of these motions had been made prior to the hearing. Hughes' motion to withdraw as counsel for CMC was made the day of the hearing.

As stated earlier, Judge Davis found and ordered that:

(1) Good faith negotiations existed and therefore Wasserburger's motion for default judgment was denied;

(2) RIA was allowed to intervene;

(3) Garnishee Hughes was permitted five working days to answer the garnishee summons;

(4) Hughes was permitted to withdraw as counsel for CMC; and

(5) The garnishment action regarding the trust funds was moot and the money held in trust by Hughes was released.

Clearly, there was no motion before the court requesting summary judgment, dismissal or requesting the garnishment action be declared moot or seeking release of the funds. Nothing contained within the motions or affidavits of the parties gave notice to Wasserburger that his claimed

**5.** SDCL 15–6–55(b) provides in salient part: "Judgment by default *may* be entered as follows[.]" (Emphasis added.)

**6.** Several other oral motions were made at the hearing, *e.g.,* Shultz made a motion for further discovery. However, these four were the written motions of the parties and the ones addressed in the court's order.

rights in the trust funds were or would be challenged or determined at the hearing. Judge Davis essentially took judicial notice of the action in the Eighth Circuit, whereby Judge Moses found that the Department of Water and Natural Resources did not issue a permit to CMC. Judge Davis quite obviously concluded from that finding that the conditions of the trust agreement had not been met and therefore Wasserburger had no present rights or interest in the trust funds. This ruling, in effect, was also an adjudication of the validity of the trust agreement itself and, in essence, constituted a summary judgment in favor of CMC and RIA.

 Statements made by Judge Davis and Shultz at the hearing suggested that they believed some type of chicanery was possibly being committed by CMC regarding the handling of the trust funds. In fact, Judge Davis stated during the hearing, "I think this trust agreement was an attempt to hold our State Department of Water and Natural Resources hostage and get permission to continue to do what it appears that [CMC] never had intentions to do, none of which has come about." Additionally, he stated he believed some "shenanigans" were going on. Clearly in the mind of Judge Davis, a question of fact existed surrounding the validity of the trust agreement and the rights and interests of the parties to the trust funds. Under these facts, it was inappropriate for the court to adjudicate the garnishment action moot, since there were several issues left to be determined.

In *Norwest Bank Black Hills v. Credit Union,* 433 N.W.2d 560 (S.D.1988), we stated that when a court treats a motion to dismiss as one for summary judgment, it must advise the parties of its intent and give all parties an opportunity to present matters pertinent to such a motion. Judge Davis' ruling had the same effect as a dismissal or summary judgment even though no motion was before the court requesting such a determination of rights and interests under the trust agreement. Before such a determination, he should have advised the parties of his intent and

provided them with an opportunity to present material relevant to the decision. *See also Jensen Ranch, Inc. v. Marsden,* 440 N.W.2d 762 (S.D.1989). Wasserburger should be allowed a full hearing on such issue.

For the foregoing reasons, that part of Judge Davis' order declaring the garnishment action moot is reversed. Those portions of the order excusing the default, extending the time to answer and allowing RIA to intervene are specifically affirmed. In view of our foregoing holding, we determine that Judge Heck's order is moot.

WUEST, C.J., MORGAN and SABERS, JJ., and McKEEVER, Circuit Judge, concur.

McKEEVER, Circuit Judge, sitting for HENDERSON, J., disqualified.