Wayne WASSERBURGER, d/b/a South-
ern Hills Trenching & Construction,
Plaintiff and Appellee,

v.

CONSOLIDATED MANAGEMENT
CORPORATION, Defendant,

and

John T. Hughes, Garnishee and
Appellant (#17884),

and

Recovery Investment Associates, a
Partnership, Intervenor and
Appellant (#17908).

Nos. 17884, 17908.

Supreme Court of South Dakota.

Argued Jan. 11, 1993.

Decided June 2, 1993.

Donald R. Shultz and Jay C. Shultz of Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, for plaintiff and appellee.

Thomas W. Stanton, William A. May, Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for appellant Hughes.

Lester Nies and Gary R. Richards, Richards, Hood, Brady & Nies, Spearfish, for appellant Recovery Inv. Associates.

SABERS, Justice.

The facts and procedural history appear in *Wasserburger v. Consolidated Management Corp.*, 459 N.W.2d 561 (S.D.1990) (*Wasserburger I*). Additional facts and procedural history appear throughout.

Following this court's reversal in *Wasserburger I*, a jury found the $350,000.00 on deposit in garnishee John T. Hughes' (Hughes) trust account on May 31, 1989 absolutely and unconditionally the property of the judgment debtor, Consolidated Management Corporation (CMC). Hughes, however, is no longer in possession of these funds. Prior to this court's reversal in *Wasserburger I* and the bankruptcy filing of CMC, Hughes paid these funds over to Recovery Investment Associates (RIA). *See Wasserburger I*. On appeal, Hughes or RIA raise the following issues.

Whether the trial court:

1. lacked subject matter jurisdiction based on the bankruptcy filing of CMC.

2. erred in denying Hughes' and RIA's motions for a new trial or judgment notwithstanding the verdict based on

insufficiency of the evidence to support the jury verdict.

3. erred in refusing to conduct an evidentiary hearing to determine whether Hughes or RIA should be personally liable for the Wasserburger judgment.

4. erred as a matter of law in adjudging Hughes personally liable on the judgment.

5. abused its discretion by refusing to allow Hughes to amend his pleadings to assert a cross-claim against RIA.

6. properly denied RIA's motions to compel various admissions by Wasserburger.

7. properly denied RIA's motions in limine to prevent Wasserburger from calling various witnesses at trial and introducing various documents and exhibits at trial.

8. properly denied RIA's motion for continuance of the jury trial.

We affirm all issues except 5, which we reverse and remand.

### 1. *Subject Matter Jurisdiction*

■ Hughes claims that the September 5, 1989 Chapter 11 bankruptcy filing of CMC, and the resulting automatic stay of 11 U.S.C. § 362(a)[1], deprived the circuit court of jurisdiction and therefore, the verdict of the jury is void and unenforceable. The protection provided by § 362, however, applies only to the bankrupt debtor and his estate and does not stay actions against solvent codefendants. *United States v. Allen Bros. of Homer, Inc.*, 36 B.R. 920, 922 (D.C.1984) (citations omitted).

Nothing in the legislative history (of section 362) counsels that the automatic stay should be invoked in a manner which would advance the interest of some third party[.] Section 362 will only stay actions against the debtor, or property of the debtor's estate. Clearly, [Wasserburger] is not proceeding against the debtor, but rather is proceeding against "some third party." In addition, [Wasserburger] cannot be said to be proceeding against "the property of the estate."

*Id.* (Citation omitted.)

■ The automatic stay of § 362(a) does not afford Hughes, as a third party, any protection from Wasserburger's efforts to collect the sums he is entitled to receive from Hughes as a result of Hughes' breach of responsibilities as garnishee defendant. *Id.* at 923. SDCL 21–18–12 provides:

From the time of the service of the summons upon the garnishee he shall stand liable to the plaintiff to the amount of the property, money, credits, and effects in his possession or under his control belonging to the defendant, or in which he shall be interested, to the extent of his right or interest therein, and of all debts due or to become due to the defendant, except such as may be by law exempt from execution.

Under this statute, Hughes is subject to the claim of personal liability to Wasser-

---

**1.** 11 U.S.C. § 362 provides in part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of —

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, or a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor[.]

burger for the payment of the judgment despite the bankruptcy filing by CMC.

### 2. Insufficiency of the Evidence

■ Hughes and RIA claim that the trial court erred in denying their motions for judgment notwithstanding the verdict or for a new trial based upon insufficiency of the evidence to support the jury verdict.

In reviewing a trial court's ruling on a motion for judgment notwithstanding the verdict, this court must view evidence in a light most favorable to the jury verdict, giving the prevailing party the benefit of every inference and resolving in its favor every controverted fact. Then, without weighing the evidence, we must decide if there is evidence which would have supported or did support a verdict.

*Bankwest, Inc. v. Valentine,* 451 N.W.2d 732, 735–36 (S.D.1990) (citations omitted); *Sabag v. Continental South Dakota,* 374 N.W.2d 349, 355 (S.D.1985). In granting or denying a new trial, the trial court has broad discretionary power and its order will not be disturbed absent a clear showing of abuse of discretion. *Bankwest,* 451 N.W.2d at 737 (citation omitted); *Simmons v. City of Sioux Falls,* 374 N.W.2d 631, 632 (S.D.1985). "The trial court is best able to judge whether a verdict is the product of passion and prejudice, and the Supreme Court will not disturb its decision except for clear abuse." *Simmons,* 374 N.W.2d at 632 (citation omitted).

■ Hughes never represented to Wasserburger, South Dakota Department of Water and Natural Resources (DWNR), or to special prosecutor Fuller that any such trust agreement was in place until after he was served with the garnishee summons on May 31, 1989. Despite repeated requests, a signed copy of the purported trust agreement was never furnished to Fuller, Wasserburger, or to Judge Moses at the hearing on Wasserburger's motion for a temporary restraining order because, according to evidence presented to the jury, Hughes lost or "misfiled" the signed trust agreement for approximately sixteen (16) months. Additionally, two representatives of CMC, the secretary-treasurer, Johnie T. Patton, and the project manager and coordinating engineer, Rhett Albers, stated by affidavit that "lawyer John Hughes and CMC officials told the DWNR officials that CMC had deposited the sum of $350,000 with John Hughes to pay the creditors of CMC in South Dakota." *See Wasserburger I,* 459 N.W.2d at 562 for additional details concerning this representation by CMC.

Accordingly, there is evidence to support a finding that the trust agreement was not valid and therefore, the funds belonged to CMC. From this record, we cannot say that the trial court abused its discretion in refusing to grant a new trial on this issue.

### 3. Denial of Evidentiary Hearing

■ After the jury returned its verdict that Hughes had CMC money in his possession, Wasserburger requested a money judgment against Hughes and RIA. Before the trial court would enter a final judgment, it requested briefing by the parties on several issues including: (1) whether the court could enter a judgment against Hughes who was ordered by the circuit court to deliver the money to RIA, and (2) whether a money judgment could be entered against RIA who was not complained against in the action. At this time, Hughes requested an evidentiary hearing as to the liability of himself or RIA to Wasserburger. The court denied his motion, determining that a post-trial evidentiary hearing was not necessary. After the court held Hughes personally liable for the judgment, Hughes filed an Offer of Proof indicating the evidence he intended to present at the requested hearing.

Hughes claims the trial court erred in denying an evidentiary hearing to determine liability. He contends that the court's denial of an evidentiary hearing "deprived [him] of a significant property without due process of law." "Due process does not, of course, require that the defendant in every civil case actually have a hearing on the merits." *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971). Hughes has failed to cite any applicable authority requiring a post-trial evidentiary hearing. Hughes was permit-

ted to argue and brief the issue of liability before the trial court, but, for the most part, his liability was already determined by SDCL 21–18–12 as discussed in sections 1 and 4. In his offer of proof, Hughes failed to specify any new or additional evidence requiring a hearing.

Whether to conduct an evidentiary hearing was a question within the discretion of the trial court and this court will not overturn its decision absent an abuse of discretion. Hughes has not shown an abuse of that discretion.

### 4. *Hughes' personal liability*

■ Hughes claims that the trial court erred, as a matter of law, in finding him personally and severally liable on the judgment in favor of Wasserburger. Hughes argues that he cannot be held personally liable because he disbursed the garnished funds pursuant to Judge Davis' order.

Although Circuit Judge Davis ordered Hughes to release the funds to RIA, under SDCL 15–26A–3, Wasserburger had the right to appeal the order. In order to protect himself, prior to releasing the funds, Hughes should have provided Wasserburger with written notice of the filing of the order. If, thereafter, Wasserburger failed to appeal within sixty days, the time for appeal would have expired and Hughes could have released the funds to RIA without incurring personal liability. SDCL 15–26A–6. "A notice of entry of judgment gives to a party the power to set running the time after which his adversary may not appeal[.]" *Kallstrom v. Marshall Beverages, Inc.*, 397 N.W.2d 647, 650 (S.D.1986) (citation omitted).

When Hughes released the garnished funds, he acted at his own risk. Wasserburger appealed the order and it was reversed by this court. The jury later determined that at the time Hughes was served with the garnishee summons on May 31, 1989, he had in his possession and control $350,000 which was "absolutely and unconditionally" the property of CMC. Hughes, as garnishee, stood personally liable to Wasserburger for the amount of money "in

his possession or under his control belonging to [CMC]" under SDCL 21–18–12.[2]

### 5. *Amendment of Pleadings Against RIA*

■ Before the entry of final judgment, Hughes filed a motion to amend his pleadings to assert a cross-claim against RIA. The basis of the motion was that RIA had "fully participated in the proceedings ... under the improper designation of Intervenor" and "unjust enrichment, conversion or similar basis." The proposed cross-claim was premised on the theory that, if Hughes was adjudged personally liable, RIA should be liable over to Hughes in indemnity because Hughes had released the funds to RIA following the July 24, 1989 order. Hughes' motion was denied.

In denying Hughes' motion, the trial court held that because Wasserburger did not make RIA a defendant under SDCL 21–18–35, Hughes was without a remedy. This was error. SDCL 21–18–44 clearly provides that in garnishment proceedings, "all provisions of law relating to proceedings in civil actions at issue; including examination of the parties, amendments and relief from default or proceedings taken and appeals and all provisions for enforcing judgments, shall be applicable thereto." SDCL 21–18–44. The trial court further noted that the time for Hughes to amend his answer to cross-claim against RIA had long since passed. This conclusion was also in error. SDCL 15–6–15(b) allows an amendment of the pleadings "at any time, even after judgment[.]" It is evident that the two conclusions of law upon which the trial court based its denial of Hughes' motion were in error.

SDCL 15–6–15(b) provides in part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made

---

**2.** See text of SDCL 21–18–12 in section 1.

upon motion of any party at any time, even after judgment[.]

Although the decision to allow amendment of pleadings is within the discretion of the trial court, when issues are tried by implied consent, they *shall* be treated as if they had been raised in the pleadings. *Id.; Beyer v. Cordell,* 420 N.W.2d 767, 769 (S.D.1988) (citations omitted). "The test for allowing an amendment under SDCL 15–6–15(b) is whether the opposing party will be prejudiced by the amendment; i.e., did he have a fair opportunity to litigate the issue, and could he have offered any additional evidence if the case had been tried on the different issue." *Beyer,* 420 N.W.2d at 769 (citations omitted).

■ In July of 1989, a few days before the hearing with Judge Davis, RIA made a motion for intervention, alleging an interest in the $350,000 located in Hughes' trust account. RIA intervened, conducted and responded to discovery, filed pre-trial and post-trial motions and motions in limine, presented opening and closing statements, called, examined and cross-examined witnesses, and eventually initiated this appeal. The record indicates that RIA was more than a mere spectator in these proceedings. In fact, RIA vigorously participated in these proceedings. RIA had a fair opportunity to litigate the issue of liability and would not have been prejudiced by an amendment to the pleadings asserting a cross-claim. The trial court's denial of Hughes' motion was an abuse of discretion. To allow the trial court's ruling to stand would approve a substantial windfall to RIA in view of the fact that Hughes returned the $350,000 to RIA. As between Hughes and RIA, we reverse and remand to allow Hughes to amend the pleadings to conform to the evidence to assert a cross-claim against RIA. On remand, this determination will be on the record. This ruling does not prevent RIA from asserting set-offs or counterclaims, if any, against Hughes, which may require additional evidence.

### 6. *Motion to Compel Admissions*

■ On June 10, 1991, approximately five and a half weeks before the start of trial, RIA filed and served, by facsimile transmission, its first requests for admissions, first set of interrogatories, and first requests for production of documents upon Wasserburger. At a telephonic pretrial conference July 11, 1991, RIA moved the trial court for an order requiring Wasserburger to produce his responses on July 11, 1991. RIA's motion was granted.

Wasserburger served his responses to these discovery requests on July 12, 1991, one day late. RIA moved the trial court for an order that every request for admission and insufficient response be deemed admitted because Wasserburger's responses were "not timely served" and those responses stating lack of information or knowledge as a reason for failure to admit or deny failed to state that he had made a reasonable inquiry and that the information known or readily obtainable by him was insufficient to enable him to admit or deny. Both motions were denied.

RIA argues that the denial of it's motions is reversible error as a matter of law or reversible as an abuse of discretion. SDCL 15–6–36(a) provides in part:

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within thirty days after service of the request, *or within such shorter or longer time as the court may allow,* the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney[.]

. . . . .

An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made a reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny.

(Emphasis added.)

RIA asserts that had Wasserburger's responses been served within the time set by the trial court's order, *one day earlier,* it

would have made arrangements to depose Blair Hull and Jim Brown and "such other witnesses as discovery would develop." We find RIA's argument that it was prejudiced by the one day delay without merit. If discovery was limited, it was not due to the one day delay, but rather by RIA's own delay in commencing and conducting discovery. The trial court, under SDCL 15–6–36(a), refused RIA's motion to deem every request for an admission admitted. This refusal by the trial court does not constitute reversible error as a matter of law or as an abuse of judicial discretion.

Additionally, RIA argues that every answer which failed to comply with the statutory language in SDCL 15–6–36(a) was insufficient and therefore, should have been deemed admitted by the trial court. RIA made this motion on the day of trial. SDCL 15–6–36(a) provides in part:

> If the court determines that an answer does not comply with the requirements of this rule, it *may* order either that the matter is admitted or that an amended answer be served. The court may, in lieu of these orders, determine that final disposition of the request be made at a pretrial conference or at a designated time prior to trial.

(Emphasis added.) In denying the motion, the trial judge determined that it was "not timely to be talking about discovery on the day of trial" and that "the matter was placed on the calendar and we were set for trial and these matters should have ... been handled by the court [previously]." The statute provides the trial court with discretion. It is not required to order that the matters be deemed admitted. In exercising its judicial discretion, the trial court found the motion untimely. Because we find no abuse of trial court discretion, we do not disturb its denial of RIA's motion. *See Duncan v. Pennington Cnty. Housing Auth.*, 382 N.W.2d 425 (S.D.1986).

### 7. *Motions in Limine*

■ RIA asserts that the trial court erred in denying its motions in limine to prevent Wasserburger from calling various witnesses and introducing various documents and exhibits at trial. In support of its assertion, RIA cites this court to SDCL 15–6–37(b)(2)(B).

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending *may* make such orders in regard to the failure as are just, and among others the following:
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence[.]

SDCL 15–6–37(b)(2)(B) (emphasis added). This statute "is designed to compel *production* of evidence and to promote, rather than stifle, the truth finding process." *Magbuhat v. Kovarik*, 382 N.W.2d 43, 45 (S.D.1986), *modified*, 445 N.W.2d 315 (S.D. 1989) (citation omitted) (emphasis in original). "The severity of the sanction must be tempered with consideration of the equities." *Id.*

SDCL 15–6–37(b)(2)(B) provides a trial court with discretion in determining what, if any, sanctions to impose. RIA has failed to show an abuse of that discretion. The sanctions requested by RIA greatly outweigh the severity of Wasserburger's actions. He was, after all, only one day late in responding to the discovery order. "Less drastic alternatives should be employed before sanctions are imposed which hinder a party's day in court and thus defeat the very objective of the litigation, namely to seek the truth from those who have knowledge of the facts." *Magbuhat*, 382 N.W.2d at 45 (citation omitted). *See also Aberle v. Ringhausen*, 494 N.W.2d 179 (S.D.1992). ("[I]t is difficult to say that any delay in [RIA's] pursuit of [its] cause of action was occasioned by [Wasserburger's] nonresponse to the discovery order." *Id.* at 183.)

### 8. *Motion for Continuance*

■ Finally, RIA asserts that the trial court's denial of its motions for continuance is reversible error as a matter of law or as an abuse of discretion. Once again, RIA alleges it was prejudiced by Wasserburger's failure to respond to its discovery

requests in timely manner. Once again, we find no abuse of discretion on the part of the trial court. *Olesen v. Snyder,* 277 N.W.2d 729, 732–33 (S.D.1979). RIA's argument that it was prejudiced by Wasserburger's one day delay in responding to discovery is simply without merit.

We affirm all issues except 5, which we reverse and remand as stated therein.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

This writing is directed to issue 4 as raised by Hughes on his personal liability. Digesting the treatment of this issue, it appears that we decide this issue on procedure. Was Judge Davis' declaration for Hughes to release the fund an (a) Order or (b) a Judgment? At first blush, I assumed that if it was an Order, Hughes did not have to provide a written notice of the filing of the Order; however, if it was a judgment, to set the time running, he had to serve a notice of entry of judgment on his adversary. It seemed to me that our decision, concerning this legal point, all hinged on procedural responsibility. However, Hughes' brief camped down on the premise that Hughes was not liable because he relied upon the direction of a circuit court judge to release the money in question.

At oral argument, counsel for Hughes strongly advocated that Hughes relied upon Judge Davis' court order. In effect, that he dare not be in violation of the court order or he could be held in contempt of court. As Justice Sabers brought out in oral argument, the court order was reversed. Nonetheless, Hughes' counsel, although agreeing to that statement, expressed that Hughes relied on it at the time of its entry and that later on, it was reversed. This issue has been particularly troubling. So I went to the record and to the law on garnishment to quiet my troubled countenance.

Ordinarily, the garnishee's duty is to comply strictly with the orders of the court. *City and County of Honolulu v. Kam,* 48 Haw. 349, 402 P.2d 683 (1965); *Savard v. Physicians' Casualty Co.,* 124 Neb. 627, 247 N.W. 567 (1933); 38 C.J.S. *Garnishment* § 185 (1943). Pursuant to Judge Davis' July 24, 1989 Order, Hughes strictly complied and released the entrusted funds to RIA. However, as a consequence of our reversal in *Wasserburger I,* CMC rather than RIA has been declared the true owner of those funds. Hughes, as I have earlier expressed, now seeks to avoid being held personally liable for the $350,000, relying upon a circuit court's mandate.

At trial, the jury was instructed as to RIA's claim to the funds and that Hughes returned the entrusted money to RIA. Furthermore, Hughes had in his control property belonging to CMC.

Instructions 2 and 3 are the pertinent instructions which address the liability aspect and are attached hereto and by reference made a part hereof. A special verdict was submitted to the jury and is also attached hereto and by reference made a part hereof. According to the special verdict, the jury was asked only if the garnishee account contained the property of CMC. Nowhere in the instructions will you find notice that Hughes relinquished the funds solely upon order of Judge Davis. This information was omitted. Hughes failed to retain the funds pending final appeal and failed to place this information in the instructions by proper request. This could have been his saving grace. Nevertheless, whereas possible defects in the instructions were not objected to, the trial court was not advised of possible errors. Hughes' counsel did object to one instruction which was not germane to this point. A jury can only act on the instructions. Therefore, the jury did not have before it the legal concept/alternative that the garnishee is duty bound to follow the order and directives of the judge. In my opinion, Hughes did not preserve the appellate record on the point he advances, namely that Hughes was exonerated. To advance this point at appellate level, Hughes should have placed the court order into the in-

structions, or at least tried to, by a requested instruction. *Hogg v. First National Bank of Aberdeen*, 386 N.W.2d 921 (S.D. 1986); *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114 (S.D.1977); *accord: Weaver v. Boortz*, 301 N.W.2d 673 (S.D.1981) (Issues not briefed or presented are not preserved for appeal.) Hughes remains personally liable.

### APPENDIX

### INSTRUCTION NO. 2

This is an action brought by plaintiff, Wayne Wasserburger, d/b/a Southern Hills Trenching & Construction, by which the plaintiff seeks garnishment of a sum of money to satisfy a judgment entered by this court in favor of the plaintiff and against the defendant, Consolidated Management Corporation.

The plaintiff claims that he has a judgment against the defendant, Consolidated Management Corporation which remains unsatisfied. The plaintiff has initiated garnishment proceedings against John T. Hughes, the former attorney for the defendant, Consolidated Management Corporation. The defendant, John T. Hughes, by answering affidavit, has admitted that the plaintiff obtained a judgment against his client, Consolidated Management Corporation, which was entered on July 8, 1988, but has denied that any funds were held in his trust account on behalf of Consolidated Management Corporation, alleging instead that the $350,000 sum was held in trust for Recovery Investment Associates, *and that such funds were to be disbursed to creditors of Consolidated Management Corporation only after certain conditions were met.*

Recovery Investment Associates previously intervened in the present action for the purpose of obtaining the return of the $350,000.00 held by John T. Hughes. The intervenor claims that the funds held by John T. Hughes belonged to Recovery Investment Associates and held for the purpose of paying creditors of the defendant, Consolidated Management Corporation, only if certain conditions were met, and that such conditions were not met and therefore, the funds were returned by John T. Hughes pursuant to the terms of the trust set up for that purpose.

### INSTRUCTION NO. 3

In civil actions, the party who asserts the affirmative of an issue must prove that issue by a preponderance of the evidence.

By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force and from which it results that the greater probability of truth lies therein. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, that is, has the greater convincing force, then your finding upon the issue must be against the party who had the burden of proving it. In this action, the plaintiff has the burden of proving the following issue:

1. That the garnishee, John T. Hughes, at the time he was served with the garnishee summons, was indebted to or had property, real or personal, in his possession or under his control belonging absolutely and unconditionally to said defendant, Consolidated Management Corporation.

STATE OF SOUTH DAKOTA )    IN CIRCUIT COURT
                          ) ss.
COUNTY OF FALL RIVER )    SIXTH JUDICIAL CIR-
                                                  CUIT

|  |  |
|---|---|
| WAYNE WASSERBURGER, d/b/a SOUTHERN HILLS TRENCHING & CONSTRUCTION, a sole proprietorship, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| CONSOLIDATED MANAGEMENT CORPORATION, a Nevada corporation, | ) ) ) ) |
| Defendant, | )    SPECIAL JURY VERDICT |
| and | ) ) |
| JOHN T. HUGHES, | ) ) |
| Garnishee, | ) ) |
| and | ) ) |
| RECOVERY INVESTMENT ASSOCIATES, a Partnership, | ) ) ) |
| Intervenor. | ) |

Was the $350,000.00 on deposit in the garnishees' (John T. Hughes) trust account on May 31, 1989, absolutely and unconditionally the property of the defendant, Consolidated Management Corporation?

    YES     (Insert "yes" or "no").

Dated this 22nd day of July, 1991.